BARNETTE, Judge.
This is an appeal brought by the insurer of plaintiff’s husband from a judgment awarding her damages for personal injuries sustained while a passenger in an automobile driven by her husband which collided with one driven by the defendant Woodard L. Edge. Named defendants in the suit were Allstate Insurance Company, insurer of plaintiff’s husband, and Woodard L. Edge and his insurer, Marquette Causalty Company. During the pendency of the suit, Marquette Casualty Company became insolvent and all proceedings against it were stayed. The judgment casts Woodard L. Edge and Allstate Insurance Company. Defendant Edge did not appeal. Plaintiff answered the appeal praying for an increase in the award.
Charles Hincks, plaintiff’s husband with whom she was riding, was driving on St. Bernard Highway, in St. Bernard Parish, in an up-river direction. The defendant Edge was driving in the opposite direction on the same street until he reached the intersection of Norton Avenue at which point he made a left turn and stopped in the median neutral zone. The width of the median on this divided highway is such that an automobile stopped there does not obstruct the movement of traffic in either lane. Edge remained in this stopped position for an undetermined time to allow “four or five or six” cars to pass in front of him in an up-river direction.
Defendant Allstate made much of the fact that Edge was making a left-hand turn across the path of its insured’s oncoming car. The authorities cited are pertinent to a left-turn situation but are not relevant here. Edge had completed his left turn and remained for some time in the neutral zone before proceeding forward. The situation would have been no different if he had been traveling on Norton Avenue and stopped in the neutral zone before proceeding across the up-river lane of St. Bernard Avenue.
After allowing “four or five or six” cars to pass, Edge moved forward across the traffic lane nearest the median and into the next lane, in which Hincks was traveling. At this point the Edge car was struck on the right side between the door and front bumper by the front portion of the Hincks car. The sudden impact caused Mrs. Hincks to be thrown forward striking her head on the rear view mirror and her knees against the instrument panel, causing the injuries complained of.
Edge was intending to turn, after completing the crossing, into a gasoline service station on the up-river side of Norton Avenue. His car was moved into the station after the impact but before the investigating officers arrived on the scene.
The accident happened between 6:30 and 7:00 p. m. It was a cloudy day and some mist had been falling, requiring the use of windshield wipers. It was not entirely dark, but dark enough to require the use of headlights.
There is a funeral home on the downriver comer of the intersection across Norton Avenue from the service station. Floodlights for the illumination of the funeral home, together with headlights of approaching cars on Norton Avenue, caused Mr. Edge to be partially blinded. This, he admitted. At any rate he did not see the approaching Hincks car until he had driven into its path. There is no question of Mr. Edge’s negligence.
*402 On the other hand, Hincks, who was driving at about 35 or 40 miles per hour, did not see the Edge car stopped in the neutral zone nor did he see it begin its movement across the up-river lanes of St. Bernard Avenue until it was entering his lane a few feet (estimated by Hincks at 25 to 30 feet) in front of him. He applied his brakes but too late to avoid the collision. There is no satisfactory explanation why Hincks did not see the Edge car. Mr. Hincks admitted that several cars had preceded him along St. Bernard Avenue, but that they were not immediately in front of him. tie said there was a long line of cars “a good deal ahead.” He admitted watching them coming to a stop and checking the light ahead. We think this confirms Edge’s statement about waiting for some cars to pass. Mr. Hincks denied seeing the headlights of Mr. Edge’s car, which indicates that the Edge car was well into the up-river lanes before Mr. Hincks saw it.
The simple fact is that neither Mr. Hincks nor Mr. Edge was keeping a proper lookout and that the negligence of both drivers was a contributing proximate cause •of the accident which resulted in injury to Mrs. Hincks.
There was nothing to obstruct Mr. Hincks’ view of the Edge car. Admittedly he did not see it until a brief moment before impact. Obviously it was there in the neutral zone as Mr. Hincks approached the intersection and as it then negligently moved across the up-river traffic. Had Mr. Hincks been exercising proper care or keeping a proper lookout, he would have seen the Edge car in motion in time to stop or to move into the left lane to pass safely behind it. Michel v. Guillot, 186 So.2d 889 (La.App. 1st Cir. 1966); Suhre v. National Union Indem. Co., 145 So.2d 114 (La.App. 4th Cir. 1962); Brooks v. State Farm Mut. Auto. Ins. Co., 91 So.2d 403 (La.App. 2d Cir. 1965); Vigilant Ins. Co. v. Lumbermen’s Mut. Cas. Co., 85 So.2d 87 (La.App. 1st Cir. 1955); Bergeron v. Roberson, 63 So.2d 20 (La.App. Orleans 1953); Scheib v. Ledet, 57 So.2d 814 (La. App. Orleans 1952).
The facts here are clearly distinguishable from the situation in Planchard v. New Orleans Pub. Serv. Inc., La.App., 192 So. 2d 197, decided by us on November 7, 1966. In that case the bus driver in the relative position of Hincks here saw the other vehicle in the neutral zone waiting for traffic to clear and reduced speed until it was apparent that the other car would remain in its place of safety. At a moment when the bus was too close to stop, the other driver, without warning, left his place of safety and drove into the path of the bus. We held there that the bus driver was not negligent. He did exercise reasonable care; he was keeping a proper lookout and had a right to assume that the other driver would remain in a place of safety. Here Hincks, who never saw Edge when he was under a duty to do so, cannot indulge in the assumption which we allowed the bus driver. Because of Mr. Hincks’ negligence, Mrs. Hincks, as a guest passenger, is entitled to recover damages from his insurer, Allstate.
Mrs. Hincks’ injuries did not appear at the time to be very serious, although she was bleeding rather profusely from a gash on her forehead and complaining of bruises. She was taken to St. Claude General Hospital for emergency treatment. The wound on the forehead was dressed but not sutured, and she was able, with some discomfort of headache and bruises, to do her housework the next day. She has not been hospitalized nor disabled at any time since.
She was seen by Dr. Neal Owens, a plastic surgeon, on January 23, 1961, a little over four months after the injury was sustained. He saw her again on March 6 and May 20, 1964. In May of 1962, she was examined by Dr. Richard W. Vincent, a plastic surgeon, upon request of the attorney for defendant Marquette Casualty Company. Dr. Vincent’s letter report was admitted by stipulation, *403 and the testimony of Dr. Owens was taken by deposition.
The substance of the medical testimony is that Mrs. Hincks, who was twenty-nine years old at the time of the accident, has a horizontal elevated scar on the forehead 41/2 by y2 centimeters and a depressed scar on the superior part of the nose about 1 centimeter in length. Her more serious injury was a fractured nose causing deviation of the septum and a malalignment of the nose. The right nasal passage is occluded to the extent of 75 percent.
Both Dr. Owens and Dr. Vincent recommended excision of the scars on the forehead and nose, rhinoplasty for correction of the malalignment of the nose, and septum reconstruction to relieve the obstruction to her breathing.
Dr. Owens said this procedure would require two operations. The first for the rhinoplasty and septum revision which would hospitalize the patient about a week,' followed by a period of checkup and observation. The excision of the scars he recommended be done at another time, thus requiring two surgical • procedures! The total estimated surgical fees would be $900. The hospital costs would be in addition to this. ■
The doctors are in agreement that there is no compulsion about the recommended surgery and that Mrs. Hincks can continue to function normally except for some impairment of breathing and drainage which would increase the danger of sinus infection. • - - . •
Mr. Hincks, as head of the community, is obligated for any hospital and surgical expenses incurred, in the event Mrs. Hincks should elect to have' the surgery recommended. Because of his negligence Mr. Hincks is not entitled to recovery. In fact he has made no claim for damages. Counsel for plaintiff argues in his brief:
“ * * * This means, of course, that either Mrs. Hincks will have the operations at her expense and suffer additional pain and suffering as a result thereof, or she will be forced, by economical necessity, to go through life with a disfigured nose and forehead. Therefore, Mrs. Hincks is entitled to recover for either the additional pain and suffering of the operations or for the disfigurement which she must continue to have.”
The allowance of an amount for surgical and hospital expenses, which may, or may not, be incurred, cannot be considered. However, if plaintiff does submit to the surgical procedures recommended, there will result some additional pain and suffering and ’ temporary incapacity. On the other hand, she must continue to carry the scars and suffer the discomfort of her nasal impairment. The award of $2,000 is not excessive and appears to be adequate compensation .in either event. Plaintiff’s prayer for increase of quantum is rejected. Schwander v. Foster, 165 So.2d 891 (La.App. 4th Cir. 1964); Joseph v. Fulco, 145 So.2d 599 (La.App. 4th Cir. 1962).
Clearly, there was no abuse of the "much discretion”'vested-in the trial judge in arriving at a jüst and reasonable award of damages; and,- in the absence of such abuse, we ’ will not disturb the award. Ballanga v. Hymel, 247 La. 934, 175 So.2d 274 (1965); Ballard v. National Indem. Co., 246 La. 963, 169 So.2d 64 (1964); Alexander v. Fidelity-Phoenix Ins. Co., 185 So.2d 102 (La.App. 4th Cir. 1966).
For the foregoing'reasons, the judgment appealed' from is affirmed at appellant’s cost.'
-Affirmed.