232 So.2d 851 (1970)
Eugene J. POCHE, Jr., et al.
v.
Bobby FRAZIER et al.
Alton ANDERSON et al.
v.
Bobby FRAZIER et al.
Richard Lee HAUSCHILD et al.
v.
Bobby FRAZIER et al.
Nos. 3769-71.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1970.
Rehearing Denied April 6, 1970.
*853 Harry Nowalsky, New Orleans, Norman J. Pitre, Luling, for plaintiffs-appellees.
Alexander C. Cocke, Jr., Bryan, Caraway, Schaefer & Cocke, New Orleans, and Ralph R. Miller, Norco, for defendants-appellants, Main Mutual Insurance Co. and Claude J. Landry.
C. B. Ogden, II, New Orleans, George Oubre, Norco, for defendants-appellants, Fremin-Smith Services, Inc., and Hartford Accident and Indemnity Co.
Francis G. Weller of Deutsch, Kerrigan & Stiles, New Orleans, for defendant-appellee American Casualty Insurance Co.
Before SAMUEL, CHASEZ and DOMENGEAUX, JJ.
*854 DOMENGEAUX, Judge.
These three consolidated cases involve tort claims arising out of two automobile accidents which occurred on November 20, 1965, at approximately 5:10 p. m., on or near the Bonnet Carre Spillway Bridge on U. S. Highway 61 just west of New Orleans in St. Charles Parish. Highway 61 at that point is a four lane highway running northwest and southeast. There are two lanes running in each direction. The flow of traffic in opposite directions is divided by a double yellow line. This physical layout is also true of the Bonnet Carre Spillway Bridge, except that the highway on the bridge is bounded on both sides by a concrete abutment. A pickup truck owned by Louis Carmouche and being operated by Claude Landry was traveling on the said highway in a southeasterly direction in the right or outside lane of traffic. Just before entering the bridge the truck collided with an automobile being driven by Bobby Frazier in the same direction, but in the left or inside lane. The impact caused the Frazier automobile to cross the double yellow line into the left inside lane of the northwest bound traffic. This produced a headon collision between the Frazier vehicle and an automobile being driven in a northwesterly direction by Eugene Poche, Jr., in his left or inside lane of traffic. Mrs. Poche, Mr. and Mrs. Alton Anderson, and Mr. and Mrs. Richard Hauschild were passengers in the Poche vehicle. A fourth automobile being driven by Lorraine Braud Zeringue in the same direction and lane as the Poche vehicle crashed into the back of the Poche automobile immediately following its collision with the Frazier automobile.
The Andersons and Hauschilds filed separate actions for their injuries, charging negligence to Bobby Frazier and his alleged liability insurer, Travelers Protective Insurance Company; Claude Landry and Louis Carmouche, the latter who was the owner of the vehicle operated by Landry, and Main Mutual Insurance Company, the liability insurer of the Carmouche truck; Alvin Fremin and Henry Smith, d/b/a Fremin-Smith Services (properly-Fremin-Smith Services, Inc.) and its liability insurer, Hartford Accident and Indemnity Company, alleging Fremin-Smith Services, Inc., was the employer of Claude Landry at the time of the accident; Lorraine Braud, individually, and Eugene Poche, Jr., and his liability insurer, American Casualty Insurance Company.
The Poches filed suit against Frazier, Travelers Protective Insurance Company, Claude Landry, Louis Carmouche, Main Mutual Insurance Company, Fremin-Smith Services, Inc., Hartford Accident and Indemnity Company and Lorraine Braud.
State Block, Inc., owner of the Poche vehicle, filed suit against the above named persons for property damage to that vehicle.
In the Anderson and Hauschild matters American Casualty Insurance Company, by third party proceedings, brought action against Frazier, Travelers Protective Insurance Company, Claude Landry, Louis Carmouche, Main Mutual Insurance Company, Fremin-Smith Services, Inc., Hartford Accident and Indemnity Company and Lorraine Braud.
All actions were consolidated and tried before a jury in the Twenty-Ninth Judicial District Court on July 29-August 2, 1968.
After the trial the jury found, on special interrogatories directed to them, that:
1. Bobby Frazier was negligent and his negligence was the proximate cause of the accident.
2. Claude Landry was negligent and his negligence was the proximate cause of the accident.
3. Lorraine Braud was negligent but her negligence was not the proximate cause of the accident.
4. Eugene Poche was not negligent.
5. Louis Carmouche had not leased his truck to Fremin-Smith.

*855 6. Claude Landry was an employee of Fremin-Smith Services, Inc., at the time of the accident.
7. Bobby Frazier was not afforded liability insurance coverage through Travelers Protective Insurance Company.
8. Eugene Poche was entitled to $75,000.00 for injuries and permanent disability and $10,000.00 for past and future medical expenses for him and his wife.
9. Miriam Poche was entitled to $75,000.00 for injuries and permanent disability.
10. State Block, Inc., was entitled to $3,300.00 property damage.
11. Alton Anderson was entitled to $50,000.00 for injuries and permanent disability and medical expenses of $15,000.00 past and future for him and his wife.
12. Hazel Anderson was entitled to $20,000.00 for injuries and permanent disability.
13. Richard Hauschild was entitled to $5,000.00 for injuries and permanent disability and medical expenses of $15,000.00 past and future for him and his wife.
14. Connie Hauschild was entitled to $75,000.00 for injuries and permanent disability.
After the trial, but before the matter was submitted to the jury and before argument of counsel, Fremin-Smith Services, Inc., and Hartford Accident and Indemnity Company filed exceptions of no right or cause of action based upon the testimony that Claude Landry was not an employee of Fremin-Smith Services, Inc., and, therefore, Fremin-Smith Services, Inc., could not be held responsible for his acts of negligence, if any. The exceptions were overruled by the trial judge.
At approximately the same point in the proceeding, that is, after the close of the testimony but before the matter was argued or submitted to the jury, defense attorneys asserted that there was newly discovered evidence pertinent to the trial. Motion was made to reopen the case to hear the testimony of a new witness, one Jenny Jones. The court refused to reopen the case but allowed interested defense attorneys, by proffer, to relate into the record substantially what would have been Miss Jones' testimony.
The trial judge thereafter rendered judgment in accordance with the jury's verdict and cast Bobby Frazier, Claude Landry, Fremin-Smith Services, Inc., Hartford Accident and Indemnity Company to the limits of its policy and Main Mutual Insurance Company to the limits of its policy, jointly, severally and in solido.
There was further judgment dismissing plaintiff's demands against Lorraine Braud, Louis Carmouche and Travelers Protective Insurance Company and American Casualty Insurance Company, dismissing plaintiffs' right to proceed against American Casualty Insurance Company under the uninsured motorist's clause, and dismissing American Casualty Insurance Company's third party demand against Bobby Frazier, Louis Carmouche, Claude Landry, Fremin-Smith Services, Inc., and Lorraine Braud.
Thereafter counsel for Fremin-Smith Services, Inc., and Hartford Accident and Indemnity Company, joined by counsel for Claude Landry and Main Mutual Insurance Company, moved for a new trial and alternatively for a remittitur. These motions were denied by the trial judge.
In due course suspensive appeals were lodged for Fremin-Smith Services, Inc., and Hartford Accident and Indemnity Company along with Claude Landry and Main Mutual Insurance Company. Bobby Frazier and Lorraine Braud did not appeal. Plaintiffs have each answered the appeals seeking an increase in the awards.
*856 The first question to be decided by this court is whether the trial judge erred in denying the defendant's motion to reopen the case in order to hear the testimony of Miss Jones. The decision to reopen a case for the production of additional evidence after all parties have rested is one which is within the sound discretion of the trial court and unless manifestly erroneous will not be disturbed on appeal. LSA-C.C.P. art. 1632; Dupre v. Hartford Accident & Indemnity Company, La.App., 200 So.2d 753; Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Succession of Lefort, 139 La. 51, 71 So. 215. The accident in question occurred on November 20, 1965 and Miss Jones was not mentioned as a witness until August 2, 1968, the last day of the trial. Counsel for the defense stated that they did not learn that Miss Jones had seen the accident until that morning yet, as the trial judge states in denying the motion, Miss Jones had in all probability been a resident of Norco for the thirty-two months that intervened between the accident and the trial, and in fact resided but a short distance from the office of one of the defense attorneys. While we are not prepared to say that the defendants failed to exercise due diligence in finding their witness, we cannot assert with such certainty as would be required to justify overruling the decision of the trial judge, that they did exercise such diligence. Furthermore our reading of the proffer of what Miss Jones' testimony would be indicates to us no reasonable basis for altering the conclusions that we reach in these cases. We are therefore unable to say that the trial judge abused his discretion in denying Miss Jones the opportunity to testify.
Appellants also urge the finding of the jury that both Landry and Frazier were negligent as grounds for reversal. Frazier has not appealed and we are therefore concerned only with the finding of negligence on the part of Landry. Appellants argue that Landry and Frazier could not, in view of the nature of the accident and the testimony adduced at trial, both be negligent. It is their contention that only one was negligent, and that one was Frazier.
We are faced here with a joint tort-feasor situation. There was an initial collision between the vehicles being driven by Landry and Frazier. As a direct result of this collision the Frazier vehicle struck the Poche automobile, injuring its passengers whom all agree were innocent third parties. Either Landry, Frazier, or both caused the initial collision which in turn caused the ultimate injury to the plaintiffs. Our law is well settled that when an innocent third party is injured as a result of a collision between two drivers, each of the drivers is deemed guilty of negligence per se and the burden of proof falls upon each to exculpate himself from negligence proximately causing the injury to the third party. Ashenfelter v. Gertrude Geddes Willis Life Ins. Co., La.App., 209 So.2d 299; Dominique v. Insurance Company of North America, La.App., 195 So.2d 312; Gauthreaux v. Hogan, La.App., 185 So.2d 44; Jones v. Southern General Insurance Company, La.App., 157 So.2d 335; Emmco Insurance Co. v. Liberty Mutual Insurance Co., La.App., 138 So.2d 822. True, most cases in which this theory has been applied deal with circumstances in which a stationary object or plaintiff is struck as a result of the collision between the two defendant drivers, nevertheless we think that for all practical purposes the situation in this case is the same. The reason that the stationary plaintiff can avail himself of this theory is the fact that being stationary there could be no negligence on his part. There is no proof or question of negligence on the part of Poche or his passengers in the case before us, and in fact Poche was absolved of any negligence by the jury. We can see no difference between a moving vehicle which is completely free from negligence and a stationary vehicle. In neither case could the plaintiff have contributed to the occurrence of the accident and therefore he should be entitled to the same rights in both cases. To satisfy their burden, Frazier introduced his own testimony and that of his guest passenger *857 to the effect that he was proceeding lawfully along the highway toward New Orleans, when the Landry pickup truck suddenly veered into his lane of travel, striking the front right area of his automobile. Landry on the other hand testified that he was lawfully proceeding toward New Orleans in the right lane when suddenly the Frazier vehicle sideswiped the left door of his truck. His testimony is corroborated by one Gaspard who allegedly was following Landry and saw the accidents. The state trooper who investigated the accident was of the opinion that the Landry version was correct and issued a traffic citation for negligent injuring to Frazier. Frazier later pleaded guilty to the charge.
The jury obviously was not convinced by either exculpation since it held both of them negligent. Since Frazier has not appealed the decision we concern ourselves only with Landry.
Gaspard testified that he was immediately behind Landry and thus witnessed the entire occurrence, yet Landry himself stated that just before the first collision he looked in his rear view mirror and saw no one behind him. Notably at one point during the trial he said that he did see Gaspard behind him but he was successfully impeached by the use of his previous deposition. Furthermore, whereas all of the other witnesses generally testified that the weather was clear and dry and that it was still daylight, Gaspard said that it was drizzling, the road was wet, and it was dusk at the time of the accident. From these discrepancies it is not unreasonable to conclude that Gaspard did not actually see the accident but only came along afterwards. He was working on the same job as Landry and this too must be considered in weighing the testimony that he gave in favor of his co-worker. The state trooper of course arrived when it was all over. There was no physical evidence such as tire marks or debris, which would indicate how the collision between Landry and Frazier occurred. Both of their vehicles had continued from the point of impact to their final resting places; Frazier's against the Poche automobile, and Landry's to the point past the Frazier-Poche point of impact. His opinion then, of how the first accident occurred, is entitled to little, if any, weight. Finally there is the matter of Frazier's guilty plea. This was the second or third time Frazier had traveled from Carville to the courthouse in St. Charles Parish to see about his citation. He testified that he was going to plead not guilty but that: "I don't know who it was told me if I pleaded not guilty I would get two or three years in jail and I didn't want to go so I pleaded guilty and I paid a fine."
In addition to the fact that we are not ordinarily impressed with the evidentiary value of a guilty plea to a traffic violation, Frazier, a common laborer, was not represented by an attorney at the time of his plea, and we cannot say that a person such as he, unschooled in the ways of the law, could not fall into the pitfall that he described and unwittingly plead guilty to a charge of which he may have been innocent.
For the above reasons we must conclude that Landry failed to exculpate himself from negligence. The jury therefore did not err in holding both Landry and Frazier guilty of negligence proximately causing the accident.
Next we must consider whether the jury was correct in finding that Landry was an employee of Fremin-Smith rather than an independent contractor. The significance of this determination being, of course, that if Landry was an employee acting within the scope of his employment, Fremin-Smith and its liability insurer would be liable for his torts, whereas if he was an independent contractor they would not be. LSA-C.C. art. 2320; Travelers Fire Ins. Co. v. Savoy, La.App., 82 So.2d 68.
Landry had no written contract with Fremin-Smith but only a verbal agreement for the use of his truck to haul Fremin-Smith's *858 tools. He states that Fremin-Smith also asked him to drive the truck. The rate of pay was $3.00 per hour, payable on Friday of each week. Each day Landry reported for work where Fremin-Smith told him to and hauled Fremin-Smith's tools around to the workmen in his truck. While at the job he was primarily under the direction of the U. S. Army Corps of Engineers, as were all of the men working for Fremin-Smith on the site. This was due to a contract which Fremin-Smith had with the Corps of Engineers to clean up the debris left by Hurricane Betsy. It is evident that Fremin-Smith had the right to control Landry's work, although in fact they may have exercised this right but little. There is no indication in the record of whether Fremin-Smith and/or Landry were obligated to continue the relationship set up by their oral agreement until the end of the work forming the subject matter of the contract between Fremin-Smith and the Corps of Engineers. Neither is there an indication that either party could be held for damages should Landry leave the job either voluntarily or by discharge.
In Hardware Dealers Mutual Fire Ins. Co. v. Willis, La.App., 179 So.2d 441, our brothers of the Third Circuit reviewed the factors which have been considered in our jurisprudence in determining whether a worker is an independent contractor. Their conclusions, with which we are in agreement, were that for a worker to be classified as "independent contractor," there must have been an actual contract for a specific undertaking or amount of work for a specified price; the party engaging the worker must not have had the right to control and direct the worker in the performance of that work except as to the result; a definite period for performing the undertaking must have been fixed; and the contract must not have been subject to termination or discontinuance at the will of either party without corresponding liability for its breach. Adopting those criteria and applying them to the case at bar we readily conclude that Landry was not an independent contractor but rather an employee of Fremin-Smith. We further conclude that Landry was at the time of the accident acting within the course and scope of his employment. Although the job had terminated that afternoon, Landry still had the tools of Fremin-Smith in his possession, and his job would not be complete until he returned those tools to his employer's yard. This he was on his way to do when the accident occurred. The jury was therefore correct in holding Fremin-Smith to be liable for Landry's torts. For the same reasons the trial judge did not err in overruling the defendants', Fremin-Smith and Hartford Accident and Indemnity Company, exceptions of no right of action on the ground that Claude Landry was not an employee of Fremin-Smith.
Appellants contend that the trial court's explanations of proximate cause, particularly his second explanation given when the jury returned to ask for further instruction on the subject, served only to confuse the jury and might be the reason that they found both Landry and Frazier guilty of negligence. We have reviewed the record on this point with diligence and we find that the trial court's instructions, while lengthy are not legally incorrect. Nor do we opine that the judge's instructions were the reason for the jury's verdict being what it was. We are reinforced in this latter conviction by the fact that we have reached the same conclusion on the points of negligence and proximate causation as did the jury.
Finally we come to the issue of quantum.
Mr. Poche, who was 40 years of age at the time of the accident, suffered multiple lacerations, some of which required sutures about the face; a fracture of the zygoma, the small bone bordering the outside of the eye; a comminuted fracture of the right tibia; and a fracture of both bones, the tibia and the fibula, comprising the left ankle. His treatment included the insertion *859 of nails, screws, and pins into the fractured bones in order to hold them together as well as the subsequent removal of some of these. In all he spent a minimum of 38 days in the hospital. At the time of trial the fractures had all healed well, but his right foot turned out 15 Also he demonstrated a click or cracking in the left ankle which was due to a small loose body in the joint, and cracking sound in the right knee. There was evidence that he had developed traumatic arthritis of the degenerate type. The physician called his present condition permanent. Mr. Poche was an active and athletic man prior to the accident who enjoyed playing ball games, etc., with his and other children. Since the accident he is unable to engage in such activities. Further he has been hindered to some extent in his employment, which requires considerable physical activity such as ascending ladders and scaffolds, repairing machinery, etc. The jury awarded him $75,000.00 for pain and suffering, mental and physical, and permanent disabilities. They also awarded him $10,000.00 for medical expenses, past and future.
His wife, Mrs. Poche, 36 years of age, suffered a depressed fracture of the skull in the left parietal bone and three fractures of the pelvis, as well as a whiplash injury. Her treatment involved a hospital stay of 32 days and several visits to the Ochsner Clinic. During these later visits it was discovered that she had also sustained injury to the labyrinthine system of her left ear, causing a partial loss of hearing, particularly in the high frequencies, and also dizziness which she experiences upon lying down or rising suddenly. Although the bone fractures have healed, the dizziness and loss of hearing will probably be permanent. Mrs. Poche was a housewife, active in church, community, and social affairs. Since the accident she has been unable to participate in these affairs and her capacity as a housewife has been severely limited. The jury awarded her $75,000.00 for pain and suffering, mental and physical, and permanent disabilities.
Mr. Anderson, aged 48, sustained various fractures of the facial and jaw bones and of two ribs, along with a severe laceration of the lower lip. He also developed a hole in the upper part of his mouth as a result of one of the fractures. His treatment necessitated a tracheotomy to permit him to breathe. The fractures of his face and jaw were repaired by the use of wire and clamps. The hole in his mouth was covered with tissue. In all he spent 15 days in the hospital and returned for several visits and treatments thereafter. He has some slight residual facial disfigurement. He was still bothered by his mouth and jaw at the time of trial, and due to the skin patch on the roof of his mouth, he has developed an aversion to eating certain food such as fish. The jury awarded Mr. Anderson $50,000.00 for pain and suffering, mental and physical, and permanent disabilities. For medical expenses, past and future, he was awarded $15,000.00.
Mrs. Anderson, 46 years of age, suffered a comminuted fracture of the right wrist which was in many pieces and involved both the wrist joint and the end of the arm bone which forms one side of the wrist joint. She also had a fracture of the right leg between the ankle and the knee in the tibial shaft. Further, she sustained several lacerations about the face. Her treatment involved suturing of the facial lacerations, the insertion of a plate and four screws in her right leg, and the placing of plaster casts on her right arm and right leg. Mrs. Anderson was hospitalized for a period of 20 days. Because of her arm injuries she was unable to use crutches until February 16, 1966 and was therefore confined to a wheelchair. She was forced to wear leg casts until April 5, 1966, almost six months from the date of the injury. At the time of trial Mrs. Anderson still had the plate in her leg and had presumably lost 50% of the palm up-palm down motion of her right hand. She had tenderness about the plate area and pain in the right wrist. The jury awarded her $20,000.00 for pain *860 and suffering, mental and physical, and permanent disabilities.
Mr. Hauschild, aged 34, suffered a fractured nose and two fractured ribs, along with lacerations on the forehead and right hand. He was not hospitalized beyond the emergency room of Ochsner and all of his maladies healed well. The jury awarded him $5,000.00 for pain and suffering, mental and physical and permanent disabilities. His award for medical expenses, past and future, was $15,000.00.
His wife, Mrs. Hauschild, aged 32, sustained a fractured dislocation of the spine at the level of the third lumbar vertebra. Her treatment required that her back be opened and two pieces of processed bone be screwed to her spine in order to support the fractured area. It was also wrapped in wire to secure it further. She remained in the hospital until December 22, 1965, or 32 days from the date of the accident. On December 15, 1965, a plaster body jacket was applied which covered her from the neck to the buttocks. On January 13, 1966 the body jacket was changed. She wore the second jacket until February 14, 1966 at which time she was placed in a brace that she wore for approximately six months more. On September 27, 1967 she was forced to undergo another operation for the removal of the struts and screws that had been placed in her back. The injury and subsequent surgical procedures caused the fusion of three of her vertebrae, thus her field of motion in all direction has been permanently impaired. Also because three of the five vertebrae that allow most of the flexion of the back have been fused, the other two must take up the extra strain. This makes it more likely that she will experience back trouble in the future than would be the case had her back not been injured. The jury awarded Mrs. Hauschild $75,000.00 for pain and suffering, mental and physical and permanent disabilities.
In reviewing the awards made by the jury we note that the medical expenses incurred by each plaintiff were stipulated to by counsel. The amounts stipulated to are substantially less than those awarded by the jury. Medical expenses, in order to be recoverable must be proved and awards will not be made for future medical expenses which may or may not occur in the absence of medical testimony that they are indicated and setting out their probable cost. Hincks v. Edge, La.App., 194 So.2d 400. In this case no such showing was made. None of the physicians who testified, and incidentally all were produced by plaintiffs, had anything of substance to say about future medical expenses. This court cannot pull a figure out of the air and award it as damages for future medical expenses, the occurrence of which is but a speculative possibility. Crowther v. Aetna Casualty & Surety Co., La.App., 96 So.2d 94. The awards must therefore be reduced to the amounts stipulated to by counsel as being the sums expended by the plaintiffs. The awards for medical expenses will be set as $4,653.35 to Mr. Poche; $3,457.60 to Mr. Anderson; and $3,961.10 to Mr. Hauschild.
There was another stipulation between counsel that Mr. Poche expended the sum of $630.00 in paying one Mrs. May Hote to care for the Poche children while Mrs. Poche was unable to do so. The sum was computed on the basis of $35.00 per week for 18 weeks. The jury failed to include this item in its award to Mr. Poche. This was a legitimate, proved, expense arising as a direct consequence of the accident which should have been and is hereby included in the judgment, and added to the awards in favor of Eugene Poche.
Turning now to the general damages we wish to point out that this court is cognizant of, and has given due consideration to the seriousness of the injuries suffered by the plaintiffs. We are also well aware of the great discretion vested in the jury in questions of quantum, LSA-C.C. art. 1934(3); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127, and that we should not disturb the jury's award *861 of general damages for personal injuries in the absence of a clear abuse of that discretion. Each personal injury must be evaluated according to its own peculiar facts and circumstances yet prior awards for similar injuries may also be considered. Their relevancy, of course, lies only in that they may be indicative that the present award is so greatly out of proportion with past awards as to suggest a probable abuse of the jury's discretion. It is our opinion, based upon the facts and circumstances peculiar to these cases as well as a review of the judgments rendered by us and our brethren of the other Courts of Appeal, that substantial justice will be done if the awards are lowered. Therefore the general damages awarded by the jury for disability and mental and physical pain and suffering will be reduced as follows:
Eugene J. Poche, Jr., from $75,000.00 to $25,000.00
Miriam Poche from $75,000.00 to $30,000.00
Alton Anderson from $50,000.00 to $17,500.00
Hazel Anderson from $20,000.00 to $9,500.00
Richard Hauschild from $5,000.00 to $2,500.00
Connie Hauschild from $75,000.00 to $35,000.00.
For the foregoing reasons, the judgment appealed from in case No. 3769 is amended so as to decrease the jury's award to Eugene J. Poche, Jr., for medical expenses for himself and his wife from $10,000.00 to $4,653.35; decrease the award for pain and suffering to Eugene J. Poche, Jr., from $75,000.00 to $25,000.00; decrease the award for pain and suffering to Miriam Poche from $75,000.00 to $30,000.00; and also as to award Eugene J. Poche, Jr., the sum of $630.00 for child care expenses.
The judgment appealed from in case No. 3770 is amended so as to reduce the award to Alton Anderson for medical expenses of himself and his wife from $15,000.00 to $3,457.60; reduce the award to him for pain and suffering from $50,000.00 to $17,500.00; and reduce the award for pain and suffering to Hazel Anderson from $20,000.00 to $9,500.00.
The judgment appealed from in case No. 3771 is amended so as to reduce the award to Richard L. Hauschild for medical expenses of himself and his wife from $15,000.00 to $3,961.10; reduce his award for pain and suffering from $5,000.00 to $2,500.00; and reduce the award to Connie Hauschild for pain and suffering from $75,000.00 to $35,000.00.
In all other particulars the judgments of the trial court are affirmed. Costs of these appeals are to be borne by defendants-appellants.
Amended and affirmed.