391 So.2d 13 (1980)
Jack C. EDWARDS and Cheryl Ann Edwards, Plaintiffs-Appellants,
v.
The LEWIS GROCERY COMPANY, Willie Clark, Jr. and the Travelers Insurance Company, Defendants-Appellants.
No. 14316.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1980.
On Rehearing December 8, 1980.
*14 Snellings, Breard, Sartor, Inabnett & Trascher by Kent Breard, Monroe, for plaintiffs-appellants.
Theus, Grisham, Davis & Leigh by R. L. Davis, Jr., Monroe, for defendants-appellants.
Before PRICE, HALL and FRED W. JONES, Jr., JJ.
*15 PRICE, Judge.
Plaintiffs, Jack C. Edwards and his wife, Cheryl Edwards, seek damages for injuries sustained by Mrs. Edwards in a motor vehicle collision. Judgment was rendered against defendants and in favor of Cheryl Edwards for $60,000. Both parties have appealed. Liability has been admitted, and therefore the sole issue on appeal is the amount awarded by the trial court. We affirm for the reasons assigned.
Plaintiffs assign as error the inadequacy of the award for general damages to Cheryl Edwards; the failure of the court to award her damages for a loss of earning capacity; and the rejection of the claims of Jack Edwards for future medical costs and the cost of providing domestic help because of his wife's alleged disability. Defendant contends the amount awarded is excessive and should be reduced.
Cheryl Edwards was injured on September 2, 1975, when the car in which she was riding collided with a tractor-trailer rig owned by Lewis Grocery Company. As a result of this accident she sustained injuries to her neck and lower back. She was first treated by her family physician, who referred her to Dr. Frank Cline, an orthopedist. Dr. Cline examined Mrs. Edwards for the first time on September 19, 1975. Initially he diagnosed her injury to be a musculoligamentous cervical and lumbosacral strain and placed her on medication and a conservative regime of treatment. Mrs. Edwards continued to suffer back pains and headaches, so in May of 1976 Dr. Cline performed a myelogram which indicated a possible disc protrusion. The test, however, showed no evidence of neurological deficits, and therefore Dr. Cline advised Mrs. Edwards to continue with the conservative treatment. Mrs. Edwards' symptoms of pain persisted, so in November of 1976 she was hospitalized for further diagnostic treatment. During her hospitalization she underwent an electromyogram and an epidural venogram. The results of these tests indicated to Dr. Cline that the disc protrusion had probably resolved itself, and that the cause of Mrs. Edwards' continued discomfort was nerve irritation. He continued to prescribe conservative treatment.
In April of 1977 Mrs. Edwards sought treatment from Dr. Owen B. Tabor, an orthopedic surgeon of Memphis, Tennessee. Dr. Tabor's report indicated that Mrs. Edwards underwent extensive tests and had a neurosurgical consultation with Dr. D. J. Canale. Dr. Tabor performed a myelogram and an electromyogram on Mrs. Edwards which were interpreted as normal. On Dr. Tabor's suggestion, Mrs. Edwards was examined by Dr. Roy Bond, a psychiatrist who saw her on several visits and suggested she continue with psychiatric care when she returned to Louisiana. After testing Mrs. Edwards for several days in the hospital, Dr. Tabor's final diagnosis was: (1) chronic lumbosacral strain with possible lumbro disc disorder, but without neurologic deficit; (2) exogenous obesity, mild; (3) psychoneurotic depressive reaction, moderate. He further estimated Mrs. Edwards to have a 5% residual disability. For treatment he recommended an exercise program and symptomatic medication, indicating, however, that if her symptoms worsened exploratory surgery may be in order.
After returning to Louisiana, Mrs. Edwards was seen by Dr. Charles Armistead, a psychiatrist, who found her to have a chronic neurotic type of depression related to the pain and discomfort she experienced. He opined that relief of her pain syndrome would probably relieve her depression.
Dr. Ross Greer, a neurosurgeon in Monroe, performed exploratory surgery on Mrs. Edwards in December 1977, which revealed a herniated disc. The disc was surgically removed and Mrs. Edwards remained in Dr. Greer's care during her convalescence. On June 14, 1978, approximately six months after the disc surgery, Dr. Greer discharged her from his care, finding she had no residual disability.
Mrs. Edwards contends she is still having excessive pain and is incapable of performing her household work. She claims she remains depressed, nervous, and constantly tired, and therefore has lost all interest in the activities she once enjoyed. She further *16 claims her condition has worsened since the disc operation. Jack Edwards seeks compensation for inconvenience and the expense of future medical costs and domestic help needed because of Mrs. Edwards' alleged inability to do the housework.
A review of the medical testimony fails to establish any specific need for future medical treatment on the part of Mrs. Edwards.[1] Prerequisites for such an award include some medical testimony that future medical treatment is indicated and setting out the probable costs. See Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir. 1970), writ denied 256 La. 266, 236 So.2d 36; Wilson v. MaGee, 359 So.2d 315 (La.App. 4th Cir. 1978); Billedeaux v. Adams, 355 So.2d 1345 (La.App. 3d Cir. 1978); and Sikes v. McLean Trucking Company, 383 So.2d 111 (La.App. 3d Cir. 1980).
Plaintiffs contend Mrs. Edwards sustained a loss of earning capacity as a result of this accident, and that the amount awarded by the trial court is inadequate to compensate her for this loss. The evidence does not show Mrs. Edwards has any significant history of employment in the past, or that she is specially qualified for a particular occupation for which she is now disabled. Whether her history of having had a back injury from which the medical evidence shows she has recovered would prevent her from obtaining employment at a minimum wage in the future is too conjectural to justify an award for special damages for loss of wages. See Wyble v. St. Paul Fire & Marine Insurance Company, 316 So.2d 819 (La.App. 3d Cir. 1975).
The next issue to be considered is whether the evidence supports a finding that Mrs. Edwards suffers traumatic neurosis as a result of this accident. The medical consensus was to the effect that Mrs. Edwards' depression was directly related to the pain she was experiencing, and once her pain was relieved, her depression would end. There is, however, no medical evidence relating to her mental state subsequent to back surgery.
... inasmuch as a claim for damages based on alleged neurosis is nebulous, it must therefore be scrutinized with extreme care to protect tort feasors against unjustified and unwarranted claims while at the same time insuring that bona fide claims of such nature will not be denied. We hold therefore, that in tort actions proof of the existence of conversion neurosis and its causal relation to the injury producing incident sued upon must be presented in clear and convincing fashion. We so hold because in instances of this character the diagnosis of neurosis must perforce be made primarily upon subjective symptoms. Vezinat v. Marix, 217 So.2d 416 (La.App. 1st Cir. 1968). See also Devillier v. Traders & General Insurance, 321 So.2d 55 (La.App. 3d Cir. 1975) and Belson v. Subsurface Completion Service, 253 So.2d 686 (La.App. 3d Cir. 1971).
Although there is some evidence that Mrs. Edwards experiences periods of depression, we do not find it substantiates her claim that she suffers a traumatic neurosis caused by the accident. We therefore conclude the trial court did not err in denying plaintiffs this element of damages.
Plaintiffs contend the trial court erred in failing to award them damages for domestic services, past and future, on the basis Mrs. Edwards has been unable to do household work and will be unable to do it in the future.
The jurisprudence of this state has allowed a husband to recover reasonable and necessary expenditures incurred to obtain domestic help which was usually performed by his wife, but which she could not perform because of her incapacity. Hickman v. Bawcom, 149 So.2d 178 (La.App. 3d Cir. 1963); Poche v. Frazier, supra.
In the instant case plaintiffs offered no evidence showing past expense incurred for domestic help. Since the time of the *17 collision Mrs. Edwards' domestic chores have been shared by family members. While the medical evidence does assign a minimum permanent disability to Mrs. Edwards from the accident, the evidence as a whole does not support her contention that she will be disabled to perform substantially all of the usual household duties of a homemaker.
In regard to the sufficiency of the award for general damages, we recognize the amount of pain and suffering Mrs. Edwards has experienced through the lengthy period of treatment and convalescence. The award of $60,000, while in the low range, does not appear to be an abuse of the wide discretion accorded the trial court in fixing the amount of damages. The defendants' contention that the award is excessive has no merit in view of the extensive treatment undergone by Mrs. Edwards.
For the reasons herein assigned, the judgment is affirmed. Costs are to be assessed to plaintiffs.
Before PRICE, HALL, MARVIN, JASPER E. JONES and FRED W. JONES, Jr., JJ.

ON APPLICATION FOR REHEARING
PER CURIAM.
In his application for rehearing the attorney for plaintiffs, Jack C. Edwards and Cheryl Ann Edwards, has requested this court to amend the written judgment of the trial court to have it conform to the written opinion of the trial judge. The judgment as prepared and signed by the court suggests that the award is in favor of both plaintiffs, Jack and Cheryl Ann Edwards, whereas the trial court actually rejected all demands of Jack Edwards as head and master of the community, and the sum awarded was solely in favor of Cheryl Ann Edwards.
Our opinion is amended to clarify the judgment of the trial court in this respect and to delete any reference to the award being in favor of Jack C. Edwards.
NOTES
[1] The record reveals that all of Mrs. Edwards' medical expenses, totaling $7,193.07, were paid by the defendant insurance company.