435 So.2d 1022 (1983)
Henry HOLMES, Jr., et al.
v.
Michael CHRISTOPHER, et al.
Carolyn Ann Brown SCHMIDT, et al.
v.
Henry HOLMES, Jr., et al.
Kenneth G. SONIAT, et al.
v.
Michael CHRISTOPHER, et al.
Nos. 12733 c/w, 12734 c/w and 12735.
Court of Appeal of Louisiana, Fourth Circuit.
May 24, 1983.
Rehearings Denied August 23, 1983.
*1023 Jack M. Alltmont, Sally A. Shushan, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for defendants-appellants Mississippi River Bridge Authority and Employers Fire Ins. Co.
William D. Norman, Jr., Midlo & Lehmann, New Orleans, for defendant-appellee Michael Christopher.
Felicien P. Lozes, Lozes & Lozes, New Orleans, for defendants-appellants Cheryl Butts and Commercial Union Ins. Co.
Arthur C. Reuter, Jr., Reuter & Reuter, New Orleans, for defendant-third party plaintiff-appellant Boh Bros. Const. Co., Inc.
Daniel Lund, Montgomery, Barnett, Brown & Read, New Orleans, for plaintiff-appellee Carolyn Ann Brown Schmidt.
Donald A. Hammett, Hammett, Leake & Hammett, New Orleans, for defendants-appellees Government Employees Ins. Co.
*1024 Before GULOTTA, KLEES and AUGUSTINE, JJ.
KLEES, Judge.
This case arises from a head-on collision on the Algiers approach to the Greater New Orleans Mississippi River Bridge during the early morning hours of Saturday, September 28, 1974. At approximately 4:11 a.m. on that morning, a 1966 Ford driven toward New Orleans by Mr. George Schmidt collided head-on with a 1971 Buick driven toward Algiers by Mr. Henry Holmes. As a result of the accident, Mr. Schmidt was killed and his two passengers, Mr. Kenneth Soniat and Mr. Frederick Parsons were injured, along with Mr. Holmes.
Also involved in the lawsuit, as defendants, are Ms. Cheryl Butts, and Mr. Michael Christopher. Ms. Butts was the driver of a 1974 Dodge automobile which at the time of the accident was travelling in a New Orleans bound direction on the bridge ahead of the Schmidt vehicle. Christopher, at the time of the accident, was driving his 1966 white van in an Algiers bound direction behind the Holmes car.
Additionally, the Mississippi River Bridge Authority ("MRBA") and Boh Bros. Construction Company were made defendants. The MRBA was the operator of the bridge and Boh Bros. was performing repairs on the centerspan of the bridge (the area under the steel superstructure).
All of the various lawsuits were consolidated for trial. The principal claim was that filed by Mrs. George Schmidt, individually and on behalf of her minor child, to recover for the death of Mr. Schmidt. A separate suit was filed on behalf of Mr. Schmidt's passengers, Mr. Soniat and Mr. Parsons, and another suit was filed by Mr. Henry Holmes.
Three suits were filed and consolidated for trial, and the matter was tried without a jury. In Case Number 599-072, Carolyn Ann Brown Schmidt sued individually and on behalf of her minor son, Christian Schmidt against Henry Holmes, Jr.; Cheryl L. Butts, her insurer, Commercial Union Insurance Company (subject to their policy limits of $50,000.00); Michael L. Christopher; Mississippi River Bridge Authority, its insurer, Employer's Fire Insurance Company; Boh Brothers Construction Company, Inc.; and Government Employees Insurance Company in its capacity as the uninsured motorist insurer subject to its policy limits of $5,000.00.
The trial judge found in favor of the plaintiffs against the defendants in the amount of $235,886.00.
The trial judge granted the third party demand of Government Employees Insurance Company against all of the defendants, jointly, severally and in solido for the sum of $5,000.00, with interest and costs. All other incidental demands were dismissed by the court with prejudice.
In Case Number 599-577, Frederick Parsons and Kenneth Soniat, passengers in the Schmidt vehicle, sued Christopher, Butts, Commercial Union Insurance, Holmes, Schmidt Estate and Omnibus Insurer, GEICO, MRBA, Employee's Fire Insurance and Boh Brothers. The trial judge found in favor of Soniat and awarded general damages of $1,500.00, later amended to $5,000.00 general damages, and $545.90 special damages against Holmes, Butts, Commercial Union Insurance Company, Christopher, MRBA, Employer's Fire Insurance Company, Boh Brothers Construction Company, Inc., GEICO, subject to its policy limits.
The trial court held in favor of Parsons and awarded damages of $3,500.00, later amended to $15,000.00 general damages and $13,060.19 special damages against Holmes, Butts, Commercial Union, Christopher, MRBA, Employer's Fire Ins. Co., Boh Brothers, and GEICO, subject to its policy limits.
The court granted the third party demand of GEICO against all of the defendants jointly, severally, and in solido for the sum of $5,000.00. All other incidental demands were dismissed by the court with prejudice.
In Case Number 597-062, Holmes filed suit against Christopher, Commercial Union *1025 Insurance Company, Schmidt, GEICO, MRBA, Employer's Fire Insurance Company, and Boh Brothers. The court found in favor of the defendants, and all other incidental demands were dismissed with prejudice.
After the judgment was rendered, a new trial was granted with regard to the third party contractual claim between MRBA and Boh Brothers Construction Company.

ISSUES
The defendants, MRBA, Boh Brothers Construction Company, Cheryl Butts and Michael Christopher have appealed claiming that the court erred in finding them to be negligent. They also claim that the trial court erred in failing to find the deceased and his passengers contributorily negligent. Henry Holmes has not appealed, therefore, the judgment against him is final. The plaintiff-appellee, Carolyn Schmidt, individually and on behalf of her minor son, has answered the appeal seeking an increase in the damage award.

FACTS
In his Reasons For Judgment, the trial court gave his version of the facts of this case. We summarize those facts below and find sufficient evidence in the record to support these findings of fact.
On September 24, 1978, the date of the accident from which these claims arise, road construction work was being performed on the Greater New Orleans Mississippi River Bridge pursuant to a contract between the Mississippi River Bridge Authority and Boh Brothers Construction Company.
Prior to the commencement of the work, there was an emergency lane with two lanes of traffic on each side. When the resurfacing of the Algiers bound lanes commenced, those two lanes of traffic were closed and the traffic was re-routed into the emergency lane. This was accomplished by signs and traffic control devices. The traffic was allowed to return to the normal two lanes of travel before it reached the end of the superstructure on the Algiers side of the bridge.
The head-on collision between the Holmes vehicle and the Schmidt vehicle occurred approximately one-half (½) mile past the last traffic control devices which returned the traffic to their normal travel lane.
On that morning at 4:11 a.m., George Henry Schmidt was operating a 1966 Ford sedan traveling eastward on the Bridge in the left hand lane of the two normal traffic lanes for east bank bound traffic. Kenneth Soniat and Frederick Parsons were passengers in that car. Some distance ahead of the Schmidt vehicle, a 1974 Dodge operated by Cheryl Butts was traveling in the same direction and in the same lane of traffic. A Chevrolet van operated by Michael Christopher, traveling in an opposite direction to the Butts vehicle and traveling in the emergency lane collided with the Butts vehicle in a side-swiping fashion. Christopher then apparently lost control of his van, and struck the rear of a 1971 Buick operated by Henry Holmes. Holmes was heading toward the west bank of the Mississippi River ahead of Christopher. Holmes crossed over the emergency lane boundary into the east bank bound lane of traffic, where it struck the Schmidt vehicle head-on, which collision resulted in the death of George Henry Schmidt. (The head-on collision between the Holmes vehicle and the Schmidt vehicle occurred in Schmidt's lane.) Soniat, Parsons and Holmes received personal injuries.
LIABILITY OF THE MISSISSIPPI RIVER BRIDGE AUTHORITY
The Mississippi River Bridge Authority (MRBA) is the agency legally responsible for traffic safety on the Mississippi River Bridge at New Orleans. The MRBA has the full power to construct, maintain, repair, supervise and operate the Bridge. In fact, it was statutorily mandated to keep the Bridge in good condition and repair, and to police and operate the Bridge. (See LSA-R.S. 48:1098, 48:1101.)
Therefore, the duty of the MRBA with regard to highway conditions on the Mississippi River Bridge is essentially the same as the duty owned by the Louisiana Department *1026 of Highways over the public highways of the State.
This duty was defined in the Barr v. State, 355 So.2d 52 (La.App. 2nd Cir.1978), quoting with approval from Petree v. Crowe, 272 So.2d 399 (La.App. 2nd Cir. 1973), as follows:
The duty imposed upon a state or its Department of Highways or other appropriate authority (emphasis added) is to construct and maintain highways which are reasonably safe for public travel. In the performance of this duty the character of the road and the probable traffic must be kept in view, as the requirement of reasonable safety implies safety for the general or ordinary travel, or use for any lawful or proper purpose.
The Department of Highways has a duty of maintaining the highways in a safe condition. This includes the duty of providing proper safeguards or adequate warnings of dangerous conditions in the highway. What constitutes proper safeguards or adequate warnings to motorists varies with the dangers presented and should be of such nature that it is commensurate with the danger. The negligence of the Department of Highways may be predicated on its knowledge or information of the existence of a dangerous or defective condition of the highway and subsequent failure to safeguard such condition.
(355 So.2d at p. 54)
The decision of whether a condition of a highway actually is a dangerous and hazardous one to an ordinary prudent driver is a factual one, and the court should consider the physical aspects of the roadway, the frequency of accidents at that place in the highway and the testimony of expert witnesses in arriving at this factual determination. Besnard v. Department of Highways, 381 So.2d 1303 (La.App. 4th Cir. 1980), writ denied, 385 So.2d 1199 (La.1980)
An analysis of the physical aspects of the roadway indicates that the conditions were indeed dangerous and hazardous. At the time of the accident, the Algiers bound lanes of traffic were being resurfaced. These two lanes of traffic were closed, and the Algiers traffic was re-routed into the emergency lane thereby removing the buffer zone between the lanes of traffic travelling in opposite directions.
A large electric flashing arrow directed the Algiers bound traffic into the emergency lane, then cones and flashers channeled the traffic through the construction site. Cones and flashers also curved back to the right in an attempt to channel the traffic back into the normal lanes of traffic. There was also a policeman with a flashlight to assist the traffic into the emergency lane at the beginning of the construction area. However, there was no policeman or flagman to re-channel the Algiers bound traffic into the normal traffic lanes at the end of the construction area.
The speed limit in the construction area for Algiers bound traffic was 35 miles per hour but it returned to 50 miles per hour upon leaving the construction area. The speed limit for the traffic coming in the opposite direction, i.e., toward New Orleans, remained at 50 miles per hour even parallel to the construction site.
The frequency of accidents on the bridge should also have been an indicator of the dangerous condition present at the time of the accident. The Mississippi River Bridge, prior to the accident in question, had been notorious for fatal accidents resulting from automobiles crossing the emergency lane and colliding head-on. This problem was known by the MRBA, as established at trial through the minutes of its board and through engineering studies related to the problem.
The testimony of an expert witness substantiated that hazardous conditions existed at the time of the accident. Duaine Evans, an expert traffic engineer, pointed out numerous deficiencies in the MRBA's construction plans. He testified that the numerical value of the speed limit for the Algiers bound traffic was improper. It should have been lower to allow motorists a longer reaction time to danger. Evans also stated that the traffic control devices were *1027 improper and inadequate. In his opinion, barricades with flashers should have been used to properly channel the traffic. In addition he testified that the opposing lane speed, i.e., the New Orleans bound lane speed of 50 M.P.H., was completely out of line considering the prevailing circumstances.
Considering the physical aspects of the roadway, the frequency of accidents on the bridge and the testimony of the expert witness, the condition on the bridge at the time of this construction was a dangerous and hazardous one to an ordinary prudent driver. Our courts have held that the creation or occurrence of a dangerous condition or circumstance will impose liability upon the public authority if it fails to provide proper safeguards or adequate warnings of such dangerous conditions. Pickens v. St. Tammany Police Jury, 323 So.2d 430 (La.1975); Cain v. Houston Gen. Ins. Co., 327 So.2d 526 (La.App. 2nd Cir.1976)
The trial court found that the Mississippi River Bridge Authority was negligent in failing to provide proper safeguards and adequate warnings of the dangerous conditions on the Bridge. Specifically, the trial court found the MRBA negligent for failing to reduce the speed limit for traffic in the New Orleans bound lane as it passed parallel to and abreast of the construction area. The trial court also found that the MRBA failed to effectively channel the Algiers bound traffic from the emergency lane back to the normal lanes of traffic. We conclude that the findings of the trial court are correct and are adequately supported by the record.
The MRBA argues that the accident was caused solely by the negligence of one or more of the drivers, and that the conditions present on the bridge at the time of the accident did not contribute to the cause of the accident. Additionally, they argue that the accident occurred so far away from the construction area as to preclude their negligence. The trial court found that the dangerous conditions on the bridge were a proximate cause of the accident and that the MRBA's contentions are without merit.
A public authority is liable in solido with motorists when its negligence combined with that of a motorist is found to be the proximate cause of an accident. See Brandon v. State, Through Department of Highways, 367 So.2d 137 (La.App. 2nd Cir. 1979), writ denied, 369 So.2d 141 (La.1979).
Accordingly, we conclude that the record more than substantiates the conclusion reached by the trial court in its finding of negligence against the MRBA.
LIABILITY OF BOH BROTHERS CONSTRUCTION COMPANY, INC.
At the time of the accident, the construction work on the Bridge was being performed by Boh Brothers Construction Company, Inc. Boh Brother's contract with MRBA placed certain responsibilities upon Boh Brothers for the maintenance of safe roadway conditions. The contract, in pertinent part, stated:
During all phases of construction, the contractor shall provide flagmen, barricades, signs, lights, etc., as necessary for the safe and efficient passage of vehicles across the Greater New Orleans Bridge.
It should be noted that Boh Brother's control over traffic safety was not exclusive. The traffic safety planning was done by the MRBA. The MRBA reserved the right to determine the number of flagmen for traffic control and the MRBA monitored the traffic control methods.
However, Boh Brothers was advised that:
The providing of traffic control for the safe and efficient passage of vehicles during the construction period is paramount. Control shall be in accordance with the Standard Specifications (for Roads and Bridges) and the Louisiana Uniform Control Devices Manual.
The Manual states at page 268, § 6A-4, entitled, "Responsibility", that "[t]he provisions for public protection established herein are for application by (1) State Highway Department, county, and municipal forces performing construction or maintenance operations on roads and streets, (2) contractors employed in road or street construction *1028 or maintenance under contract to any governmental authority, and (3) all others ... performing any work on highways or so closely adjacent as to create hazards for the public..."
Based on the established responsibilities of Boh Brothers and the previous findings, the company should have required greater safety precautions than the ones actually taken. Boh Brothers and the MRBA jointly participated in the traffic movement plan and its implementation by Boh Brothers was not limited to the utilization of that plan. The trial court correctly concluded that the negligence involving the traffic scheme was the joint and concurrent negligence of both parties.
We find no error in its conclusions.
LIABILITY OF GEORGE HENRY SCHMIDT
Appellants argue that Schmidt was contributorily negligent because he was driving while intoxicated.
In order to establish contributory negligence, the defendants must prove (1) the intoxication, and (2) that such intoxication was a cause in fact of the accident. Prestenbach v. Sentry, Inc., 340 So.2d 1331 (La. 1976). Merely showing that Schmidt consumed some amount of alcohol prior to the accident is not enough.
The only evidence as to Schmidt's alleged intoxication is Lieutenant Sciambra's testimony that he smelled an odor of alcohol on Schmidt's body after the accident, and a blood sample analysis which indicated a .21 alcohol content.
In Swanson v. Estate of Augusta, 403 So.2d 118 (La.App. 4th Cir.1981), the trial court refused to admit a urine test which was offered to determine alcoholic content. The trial court found that the State failed to offer the proper foundation for the admission of the report. This was due to the fact that the witness called to introduce the document could not assure the court that proper testing procedures had been followed, that the receptacles in which the specimens were placed had not been washed with ethyl alcohol, nor that precautions were taken to make sure the specimen, once removed, had not become contaminated.
In upholding this ruling, this Court held:
Before any such test result can be admitted in any civil or criminal case, the party seeking to introduce such evidence must first lay a proper foundation for its admission by connecting the specimen with its source, showing that it was properly taken by an authorized person, properly labelled and preserved, properly transported for analysis, and properly tested. Swanson v. Estate of Augusta, 403 So.2d 118, 124 (La.App. 4th Cir.1981)
These requirements were not met in the instant case. The doctor who took the blood sample from Schmidt's body at Charity Hospital did not testify at the trial, and no evidence was introduced as to whether the proper procedure was used in the taking of the sample, i.e., whether there was any alcohol contamination of the sample either by treatment or medication given to Schmidt in an attempt to save his life or from the tube in which the blood was placed.
Furthermore, the Charity Hospital record did not include any mention of a request for a blood sample or of one having been taken.
Thus a proper foundation was not laid for the admission of the blood sample. The testimony of Lt. Sciambra that he observed the sample being taken falls short of establishing a proper predicate.
Lt. Sciambra further claims that he gave the vial of blood to Mr. Waguespack at the New Orleans Police Department Crime Lab on Saturday morning, September 28, 1978. Waguespack, however testified that the lab was closed on that day and that he did not see the vial of blood until September 30. He stated that he had no knowledge of how the blood was handled between the 28th and the 30th. Furthermore, the tube was not sealed, but merely covered with a removable rubber stopper, and was not permanently labeled. Thus, the proper preservation of the blood between the time it was taken and its testing was not proved.
*1029 Waguespack admitted having no personal knowledge of the conditions under which the blood sample was taken. He stated that if it was not done properly, for example, if the area was swabbed with alcohol, the result of the testing could not be relied upon. He further testified that Schmidt's blood looked unusual and did not appear to be normal blood. Thus, the testimony of the man who tested the blood indicates the unreliability of the sample.
In addition to the evidence that the results of the testing of the blood sample were questionable, there was testimony at trial that Schmidt had consumed very little alcohol on the night of the accident. Both Parsons and Soniat testified that Schmidt had only one dollar to spend at the bar they had stopped at on the way home, and that he only had one glass of beer.
In any event, it was not proved at trial, that whatever alcohol Schmidt may have consumed during the evening of the accident was a contributory factor to the accident. The trial court was presented with no evidence to indicate any fault on the part of Schmidt, thus it properly concluded that he was not negligent.
LIABILITY OF CHERYL BUTTS
On September 28, 1974, at approximately 4:00 a.m., Cheryl Butts was traveling on the Mississippi River Bridge. She was travelling, along with two passengers, in the direction from the west bank to the east bank. Her vehicle, a 1974 Dodge, proceeded to cross the Bridge in the left hand lane of the two normal traffic lanes for east bound traffic. Some distance behind the Butt's vehicle, George Schmidt was operating a 1966 Ford Sedan. He was travelling in the same direction and in the same lane of traffic as was Ms. Butts. As Ms. Butts' car approached the "super structure" of the Bridge, it was sideswiped by another vehicle travelling in the opposite direction (a van operated by Michael Christopher). Subsequently, some distance behind Ms. Butts, a collision occurred involving George Schmidt, Michael Christopher, and Henry Holmes. Mr. Holmes had been driving a 1971 Buick toward the west bank. His car was located in the emergency lane[1] and was proceeding ahead of the van operated by Christopher. A head-on collision occurred between the Holmes' vehicle and the Schmidt vehicle which resulted in the death of George Schmidt.
There is uncontradicted testimony that Ms. Butts was in her proper lane when she was sideswiped. Donnie Lutz, a passenger in the car, testified that Ms. Butts stayed in her lane of traffic and was not driving eratically. Martha Pellagalle, also a passenger in the Butts' car, testified that at all times Ms. Butts was driving under control. Furthermore, a careful review of the voluminous record does not indicate the slightest negligence on the part of Ms. Butts.
However, despite this lack of negligence, the trial court found Ms. Butts liable. The trial court relied on this Court's decision in Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970), writ denied, 256 La. 266, 236 So.2d 36 (La.1979), to hold her liable. This Court, in Poche, supra, held that when an innocent third party is injured as a direct result of a collision between two drivers, each of the drivers is deemed guilty of negligence per se and the burden of exculpating himself is on each driver. The facts surrounding this particular accident do not warrant the application of the Poche rule. The record discloses that the accident with the Butts and Christopher vehicles occurred over one-half (½) mile from, and was separate and removed from the major accident causing the death of Schmidt. Even if the Poche presumption would apply to Ms. Butts, the evidence is overwhelming that she was not negligent, and she could not be held in any way liable for the death of Mr. Schmidt. Accordingly, we reverse that portion of the trial court's judgment finding Ms. Butts at fault.
LIABILITY OF HENRY HOLMES AND MICHAEL CHRISTOPHER
As regards the individual or joint fault of Holmes and/or Christopher, the plaintiff-appellee *1030 relied on the presumption of fault which the law established in her favor. The first presumption is that a driver who is wholly or partly in the wrong lane at the time of a collision is presumed to have been negligent, and the burden is upon the driver to show that the collision was not caused by his fault. Simon v. Ford Motor Co., 282 So.2d 126 (La.1973); Johnson v. McKay, 306 So.2d 417 (La.App. 3rd Cir.1975).
The second presumption relied upon by the plaintiff was enunciated by this Court in Poche v. Frazier, supra.
The record reveals that Holmes' car crossed over into Schmidt's lane. Not one witness stated that Schmidt was travelling outside of his own lane, and the description of where the vehicle came to rest supports this conclusion. The Holmes vehicle came to rest diagonally across the emergency lane with its front end in Schmidt's lane. The Schmidt vehicle came to rest in the New Orleans bound lane, against the bridge railing. Based on these facts and on the presumption previously discussed, Holmes is presumed to have been negligent in causing the accident. He, therefore, must carry the burden of showing that the collision was not caused by his fault.
The trial court found as a fact that Christopher hit the Holmes vehicle from behind prior to the collision between Holmes and Schmidt. Nonetheless, the record reveals that Holmes was in the emergency lane well beyond the point where he was supposed to exit it. The trial court considered his action as part of the proximate cause contributing to this accident and found that Holmes did not exculpate himself.
The trial court also found Christopher liable since he clearly contributed to the accident by striking the Holmes vehicle from the rear.
Our reading of the record indicates to us that there was a reasonable basis for the trial court's finding of fact, that each of these two defendants, Holmes and Christopher, did not bear their burden of exculpating themselves from negligence and, as such, we affirm the trial court's judgment regarding the liability of Christopher. Holmes has not appealed and the judgment against him is now final.
ANSWER TO APPEAL
Finally, Mrs. Schmidt has answered this appeal, seeking an increase in the award for loss of love and affection and future support.
Our review of the record in light of the guidelines set out by the Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), shows us that the award made by the trial court was not so low as to warrant an increase. We note that the award of future support was based entirely upon the testimony of Mrs. Schmidt's expert witness, Mr. Wolfson.
Accordingly, we find no abuse of the trial court's discretion in making its award and refuse to disturb the award.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it finds Ms. Cheryl Butts and her insurer, Commercial Union Insurance Co., in any way liable.
In all other respects, the judgment is affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Only the emergency lane on the superstructure was open for west bound traffic.