# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 20, 2011 Session

## BETH L. WINELAND v. CITY OF CLEVELAND, TENNESSEE ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-07-256     J. Michael Sharp, Judge**

---

**No. E2010-01465-COA-R3-CV-FILED-JULY 28, 2011**

---

Beth L. Wineland, the sole plaintiff, sustained serious injuries when the front wheel of her bicycle fell into the open slots of a metal drainage grate ("the subject grate" or "the old style grate") situated near a curb of State Highway 60. The slots on the subject grate run parallel with the direction of traffic. The subject grate is inside the municipal boundaries of the City of Cleveland. The plaintiff made a claim against the State of Tennessee in the Claims Commission and filed this action against the City of Cleveland in the trial court. The claim against the State was consolidated with this action for trial. The plaintiff alleges that the old style grate constitutes a dangerous condition on the highway and that both the City of Cleveland and the State were negligent in maintaining the highway. The trial court determined that neither defendant had a duty to change the grate and dismissed the case. The plaintiff appeals only as to the State. We reverse the judgment and remand for a determination of damages.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
### Circuit Court Reversed; Case Remanded

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellant, Beth L. Wineland.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Associate Solicitor General; and James D. Foster, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

# OPINION

## I.

There is very little in dispute about the facts of this case.  The plaintiff was riding her bicycle from home to work on a summer day in 2006.  Her route of travel took her along a section of State Highway 60 within the city limits of Cleveland.  Cleveland has a contract with the State requiring the City to maintain the highways inside the city limits "from curb to curb."  Highway 60 is considered a "bike route" as are all highways in the state other than controlled access highways.  The plaintiff, while riding a mountain bike, had taken the same route without incident on two previous occasions.  This time, she was on her road bike.  The road bike has narrower tires than the mountain bike.  She was staying to the right of vehicular traffic as she traveled along the concrete "gutter" between the asphalt-covered portion of the roadway and the concrete curb.

This accident occurred when the front wheel of her bicycle fell into the open slot and between the metal bars of the subject grate.  As we have stated, the slots, and the bars that form the slots, run parallel with the direction of traffic.  The bars are just wide enough to allow the tire and wheel of a road bike to fall through the grate and stop the bicycle instantly.  The plaintiff was thrown from her bike.  She sustained a broken nose, a broken jaw, serious facial lacerations and four of her front teeth were damaged.  Her face was left severely scarred.  She incurred over $20,000 in medical bills and expenses.

The subject grate is one of many such grates situated along the gutter portion of many of the State's highways.  The function of the grates is to operate as the inlet of a surface water drainage system that disperses water from the road surface.  The top surface of the grates is at approximately the same level as the top surface of the concrete gutter surface.  Both are lower than the asphalt which makes up the main traveled surface of the road.  One grate covers each "catch basin" that is buried under the gutter.  Water that falls onto the road runs toward the gutter.  The curb contains the water within the gutter.  Water falls through the grate into the catch basin and is directed away from the road through underground drainage pipes.  Figure 1. is a photograph of the subject grate with the wheel of the bicycle in one of the parallel slots.  Figure 1. also illustrates the relationship of the grate to the gutter, the curb, and the traveled asphalt portion of the highway.



Figure 1.

The subject grate is typical of those installed by the State between 1960 and the 1980s. The particular section of roadway where the accident happened was built in 1968.

In about 1990, the State began using drainage grates that are more "bicycle friendly" ("new style grate"). On new style grates, the metal bars run perpendicular to the direction of traffic. A bicycle tire cannot fall through the new style grate because of the perpendicular alignment. One of the reasons for adopting the new style grate design was to avoid the hazard to bicycles created by the old style grates.

In a long-range transportation plan published in 2005, the Tennessee Department of Transportation ("TDOT"), recognized that "[s]ome older drainage grates on state highways in urban areas are hazardous for bicyclists, since they can catch a bicycle wheel, causing the cyclist to fall." The plan, which specifically included the goal of encouraging and accommodating bicycle traffic, further states: "Replacing existing grates or welding thin metal straps across the grate perpendicular to the direction of travel is a retrofit opportunity that greatly improves the bicycling environment." In practice, the "added strap" alternative was susceptible to clogging. The long-range plan also states that "[provisions] for bicycles will be integrated into *new construction and reconstruction* of roadway projects through design features appropriate for the context and function of the transportation facility." (Emphasis added.) According to a TDOT high-level civil engineering manager, this means, in practice, that the new style grate is used in new construction or reconstruction but retrofits are not made. One reason is that the new style grate will not readily fit the drainage basin underlying the old style grate. The long-range plan states that with regard to maintenance

> TDOT should ensure that a mechanism exists to evaluate and make spot improvements to alleviate potential hazards . . . for bicyclists at specific locations along the state bicycle route

-3-

network. Hazards may include improperly designed or placed drainage grates . . . .

Obviously the subject grate is not within an area of new construction. According to the proof, it is also not within an area of reconstruction, although the intersection adjacent to the subject grate was completely reconstructed in 2004. The 2004 reconstruction included changes to the traffic lanes and a complete rebuild of the drainage system. New catch basins were installed to accommodate new style grates. Workers involved in the 2004 rebuild of the nearby intersection could literally see the subject grate if they looked. The construction boundaries of the 2004 reconstruction were within approximately 300 feet of the subject grate. The existing roadway and surroundings were inspected prior to and after the 2004 reconstruction. The plaintiff, in fact, rode over some of the new style grates within seconds of falling through the subject old style grate. Figure 2. is a photograph of one of the new style grates.



Figure 2.

The plaintiff alleges that the State's failure to upgrade the old style grate subjects it to liability under Tenn. Code Ann. § 9-8-307 (1999 and Supp. 2010). The pertinent part allows a person to assert

> monetary claims against the state based on the acts or omissions
> of "state employees," . . . falling within one (1) or more of the
> following categories:

> \*   \*   \*

(I) Negligence in planning and programming for, inspection of, design of, preparation of plans for, approval of plans for, and construction of, public roads, streets, highways, or bridges and similar structures, and negligence in maintenance of highways, and bridges and similar structures, designated by the department of transportation as being on the state system of highways or the state system of interstate highways;

(J) Dangerous conditions on state maintained highways. The claimant under this subdivision (a)(1)(J) must establish the foreseeability of the risk and notice given to the proper state officials at a time sufficiently prior to the injury for the state to have taken appropriate measures . . . .

*Id*. (a)(1)(I & J). There is no contention that the subject grate had been broken or damaged in some way; it was allegedly dangerous based on its original configuration.

The trial court held that the City of Cleveland was not liable under its maintenance contract because the agreement did not authorize the City to upgrade a functioning, undamaged drainage grate. The court found that the subject grate had not failed and therefore the City had no duty to replace it. As to the State, the court found that there was no duty to replace the subject grate because it met the design and construction standards when the road was built in 1968. The court found that the portion of Highway 60 that contained the subject grate had not been reconstructed so as to give rise to a duty to upgrade the old style grate. Therefore, the court held that the plaintiff's bicycle accident was not the fault of the State. It entered a "Final Order" dismissing "any and all claims" against both defendants with "full and final prejudice."

II.

The plaintiff has appealed. Her one issue, repeated verbatim, is:

Whether the trial court erred when it held that the [State] had not breached any duty owing to the [plaintiff].

III.

The standard of review for a case decided by a trial court acting as Claims Commissioner was recently articulated in *Usher v. Charles Blalock & Sons, Inc.*, ___

S.W.3d ___, No. E2009-00658-COA-R3-CV, 2010 WL 2612756 (Tenn. Ct. App. E.S., filed June 30, 2010):

> When the trial judge acts as a trier of fact, as he does when acting as Claims Commissioner, our review of factual findings is *de novo*, upon the record with a presumption of correctness unless the evidence preponderates against the Commissioner's findings. Tenn. R. App. P. 13(d); ***Cross v. City of Memphis***, 20 S.W.3d 642, 644–45 (Tenn. 2000). If the evidence preponderates against the trial court's findings, we are empowered to weigh the evidence and determine the appropriate outcome according to the preponderance of the evidence. This extends to allocating fault if necessary. ***Keaton v. Hancock County Bd. of Educ.***, 119 S.W.3d 218, 225–26 (Tenn. Ct. App. 2003). Still, we review the trial court's legal conclusions *de novo*, with no presumption in favor of the court's legal conclusions. ***Campbell v. Florida Steel Corp***., 919 S.W.2d 26, 35 (Tenn. 1996).

***Id***., at *9. If the trial court does not make a finding of fact that is necessary to the outcome, we can determine where the preponderance of the evidence lies with respect to that fact. ***Kesterson v. Varner***, 172 S.W.3d 556, 566 (Tenn. Ct. App. 2005).

IV.

The plaintiff argues that the proof shows that the old style grate was a hazard of which the State had been aware for many years. The State simply decided, according to the proof, that it would not deal with the hazard until later. She further argues that if this Court affirms the trial court, "the State would never have an obligation to remedy known hazards if the State merely decided not to as a matter of practice." Although the argument is not presented in exactly these words, the thrust of the plaintiff's argument is that the trial court improperly granted the State immunity for a "category" of activity for which the State does not have immunity under Tenn. Code Ann. § 9-8-307. We agree with the plaintiff.

Although neither party cites the controlling case, it is abundantly clear that the State cannot claim "discretionary function" immunity that is sometimes accorded to counties and cities. ***Lucas v. State***, 141 S.W.3d 121, 123 (Tenn. Ct. App. 2004). The Governmental Tort Liability Act ("GTLA") partially abrogated the common law immunity of local governmental entities such as cities and counties, but preserved immunity for actions that fall within the

-6-

category of a "discretionary function." *Id*. at 128. Eventually, the Supreme Court adopted a "planning-operational" test for discretionary function immunity. *Id*. (*citing Bowers v. City of Chattanooga*, 826 S.W.2d 427 (Tenn. 1992)). Thus, a city or county generally cannot be liable for the "planning" failure of adopting a bad standard or design, but it can be held liable for the "operational" failure of not following the standard, good or bad, once it has been adopted. *Id*. However, the GTLA "is not and never has been applicable to the State of Tennessee or its agencies and departments." *Id*. at 126. In *Lucas*, the State made the argument that it could claim "discretionary function" immunity for failing to correct a dangerous condition. This Court made several observations that are helpful in resolving the present controversy:

> The entire statutory purpose of the Tennessee Claims Commission Act is to establish the state's liability in tort based on the traditional tort concepts of duty and the reasonably prudent persons' standard of care. *See* Tenn. Code Ann. § 9–8–307(c) (Supp. 2003). As restraint on this purpose, the same statute provides: "For causes of action arising in tort, the state shall only be liable for damages up to the sum of three hundred thousand dollars ($300,000) per claimant and one million dollars ($1,000,000) per occurrence." Tenn. Code Ann. § 9–8–307(e). Within these prescribed monetary limits, the abrogation of sovereign immunity in Tennessee Code Annotated section 9–8–307(a)(1)(C)(I)(J) is unconditional as to liability in tort for actual damages.

*Id*. at 130. We further opined:

> Efforts to superimpose the "planning-operational" test of *Bowers v. City of Chattanooga* onto the Tennessee Claims Commission Act are to no avail given the explicit language used by the legislature in limiting immunities available to the state to "absolute" immunities. The "planning operational" test of *Bowers* involves a construction of the "discretionary function" provisions of the [GTLA]. Tenn. Code Ann. § 29–20–205(a). . . . [S]uch discretionary function immunity is foreign to the Tennessee Claims Commission Act . . . .

*Id*. at 136. As particularly pertinent to the case now before us, we said:

The State argues that even after it is determined that there is a dangerous condition, "then the State must be able to use its discretion in making a decision whether there are funds and other resources available to correct the dangerous condition." In such situations, the argument goes, the state has the discretion to decide that the correction is too expensive or that monetary considerations require delay in correction until other projects are completed or even that a warning is not feasible. "The State must have the discretion to make these decisions without fear of lawsuits challenging the decisions made."

This position is inconsistent with Tenn. Code Ann. § 9–8–307(a)(1)(I) and (J). It is also inconsistent with the Claims Commission Act provision that the State's liability in tort "shall be based on the traditional concepts of duty and the reasonably prudent person's standard of care." Tenn. Code Ann. § 9–8–307(c). Under generally-applicable principles of tort law, all persons have a duty to use reasonable care under the circumstances to refrain from conduct that will foreseeably cause injury to others. *Doe v. Linder Constru. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992). In determining whether, in a particular situation, there is a duty to act responsibly so as to protect others from unreasonable risks of harm, Tennessee has adopted an approach that balances the foreseeable probability and severity of harm against the burden upon the defendant to engage in alternative conduct that would have prevented the harm. *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000); *McClung v. Delta Square Limited Partnership*, 937 S.W.2d 891, 894–95 (Tenn. 1996); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). In determining whether a risk is an unreasonable one, the court must consider several factors, including

> The foreseeable probability of the harm or injury occurring; the possible magnitude of the potential harm or injury; the importance or social value of the activity engaged in by defendant; the usefulness of the conduct to defendant; the feasibility of alternative, safer conduct and the relative costs and burdens associated with that

> conduct; the relative usefulness of the safer
> conduct; and the relative safety of alternative
> conduct.

> ***Staples***, 15 S.W.3d at 89, quoting ***Coln v. City of Savannah***,
> 966 S.W.2d 34, 39 (Tenn. 1998); ***McCall v. Wilder***, 913 S.W.2d
> at 153.

> Thus, under general tort law principles, the feasibility and costs
> associated with correcting a dangerous condition or taking other
> steps to avoid injury because of that condition would be factors
> relevant to a determination of duty, not a bar to recovery by an
> injured plaintiff. Our Supreme Court has applied traditional tort
> theories to claims under the Claims Commission Act, pursuant
> to Tenn. Code Ann. § 9–8–307(c). *See* ***Stewart v. State***, 33
> S.W.3d 785, 793 (Tenn. 2000) . . . .

*Id*. at 141-142 (footnote omitted). It is clear, therefore, that the State cannot escape liability for the subject grate simply by claiming that it exercised its "discretion" in favor of waiting until later to deal with the problem.

Having reached this point, the question to be addressed is whether the subject grate falls within the category of either "negligence in maintenance of highways" or "[d]angerous conditions on state maintained highways." Tenn. Code Ann. § 9-8-307(a)(1)(I & J). We will focus on the second category because the case lends itself naturally to that analysis. The trial court did not make a specific determination on this point, therefore, under ***Kesterson***, we will make our own determination. The State argues that the grate does not constitute a dangerous condition under the test articulated in ***Sweeney v. State***, 768 S.W.2d 253 (Tenn. 1989). As stated in ***Sweeney***,

> The decision of whether a condition of a highway actually is a
> dangerous and hazardous one to an ordinary prudent driver is a
> factual one, and the court should consider the physical aspects
> of the roadway, the frequency of accidents at that place in the
> highway and the testimony of expert witnesses in arriving at this
> factual determination.

***Sweeney***, 768 S.W.2d at 255 (*quoting* ***Holmes v. Christopher***, 435 So.2d 1022, 1026. La. App. 4th Cir. 1983)); *see also* ***Helton v. Knox County***, 922 S.W.2d 877, 883 (Tenn. 1996)(applying ***Sweeney*** test to GTLA claim).

The State's first argument is that, because the accident happened on the concrete "gutter" rather than the "asphalt-covered roadway," the "physical aspects" factor weighs against finding that the grate presented a dangerous condition. We disagree. The term "roadway" is defined as "that portion of a highway improved, designed or ordinarily used for vehicular traffic, exclusive of the berm or shoulder." Tenn. Code Ann. § 55-8-101(52) (2008 and Supp. 2010). By the language of the "bicycle" statute, a person riding a bicycle "at less than the normal speed of traffic . . . shall ride as close as practicable to the right-hand curb or edge of the roadway, except" when passing, turning left, or encountering an obstacle. Tenn. Code Ann. § 55-8-175(a)(1)(2008). Thus, there can be no doubt that, as the defined term "roadway" is used in the statute telling bicycle riders where to ride on the roadway, it is permissible for bicycle riders to ride on the surface of the concrete gutter. The plaintiff testified that she was staying to the right of traffic because she was uncomfortable riding with the flow of faster-moving traffic. The State's argument to the effect that the gutter was not a physical part of the highway or somehow not an acceptable place to ride is without merit.

The State also argues that there is no proof of previous accidents on the subject grate and there was no expert testimony offered by the plaintiff, therefore the proof fails to demonstrate a dangerous condition. Again, we disagree with the State. The State has acknowledged the obvious in its long-range plan that was introduced as an exhibit at trial, *i.e.*, that the old style grate poses a danger to bicyclists. Moreover, the plaintiff called a state civil engineering manager as a witness. He acknowledged that one of the reasons for adopting the design of the new style grate is because of the dangers the old style grate poses to bicyclists. The old style grate was discontinued in about 1990.

It appears to us that if there were no such previous accidents, it can only be because no one has ridden a road bike with narrow tires across an old style grate. The evidence preponderates in favor of finding that the subject grate falls within the category of a dangerous condition on state highways.

We also find that, contrary to the State's position, the evidence preponderates in favor of finding that the State had knowledge of the condition in time to allow it to be corrected. The proof is clear that persons responsible for making decisions knew of the danger by 1990 as well as a cure for the danger. The civil engineering manager called as a hostile witness by the plaintiff and later recalled by the State testified that, even if every old style grate across the state were replaced, the project could arguable be accomplished in "a minimum of two years." If undertaken in phases, the project could take 5 or 10 years. This accident happened in 2006, some 16 years after the problem became known. We hold that the State had notice in time to have corrected this dangerous condition.

-10-

Once it is determined that one of the categories for liability is present, the State's conduct is evaluated by "the traditional tort concepts of duty and the reasonably prudent person's standard of care." Tenn. Code Ann. § 9–8–307(c). We have previously stated that we perceive the trial court's determination that there was no duty to be more akin to a determination that the State is immune from liability. We will proceed to make our own determination whether the State had a duty to address the dangerous condition posed by the old style grate using the factors articulated in *Staples* and repeated in *Lucas*.

Serious harm to any bicyclist who encounters an old style grate on a road bike is certainly probable. Fortunately the plaintiff was not thrown into traffic and killed or otherwise seriously injured, but that was more than a remote possibility to her and to any other bicyclist. The new style grate is a feasible alternative that has the added benefit of better drainage with less clogging. The possibility of adding perpendicular cross bars to the old style grate is another alternative, however, the added bars create clogging problems. The only factor that arguably weighs against imposing a duty on the State to replace the dangerous old style grate is the burden on the State of doing that on a statewide basis. It is clear that the burden to replace every grate across the state would be significant. Under the proof presented, installation of a new style grate would require the drainage basin to be replaced because an old style drainage basin will not accommodate a new style grate. There is, also, the other alternative of perpendicular cross bars. Though the cross bar alternative has introduced clogging problems, it is safer to bicyclists. Also, there are enough old style grates across the state that it will take a minimum of two years to accomplish a state-wide upgrade. The civil engineering manager testified that there would be an "economic aspect" of such an upgrade and possibly issues of funding, but he did not put any numbers on the economic impact of a major upgrade.

We believe, however, that looking at this as a problem of state-wide magnitude is an improper focus. Here, we are dealing with one grate that caused one injury to one bicycle rider. We are not holding that the State must replace or alter every old style grate across the state. We are simply holding that the State had a duty with regard to the subject grate. This approach is consistent with the law regarding other sections of Tenn. Code Ann. § 9-8-307 which treat the State and its obligations as a landowner the same as a private landowner. *Byrd v. State*, 905 S.W.2d 195, 196 (Tenn. Ct. App. 1995). A private landowner would never prevail based on the argument that it could not be held responsible for one of many dangers on its land simply because it owned too much land to eliminate all the dangers. Moreover, even the long-range plan recognized a duty on the part of the State to identify and cure specific hazards, including hazardous drainage grates. We conclude that the State had a duty with regard to the subject grate to address the hazard to bicycle riders.

The trial court did not address the elements of breach, causation and damages even though these issues were tried to conclusion and argued. Another issue that was tried but not addressed by the trial court is the comparative fault of the plaintiff. We will address all of these unresolved aspects except damages while leaving this latter determination to the trial court on remand. The State did nothing to eliminate the dangerous condition other than adopt a plan to replace the old style grate if and when the road is ever reconstructed. For a private landowner, a plan to repair a known danger sometime later is called procrastination and breach of a duty in the event of an injury. We conclude therefore that the State breached its duty. There is no serious contention, other than the plaintiff's alleged fault, that something other than the subject grate caused the accident and the injuries to the plaintiff. We therefore conclude that all the elements of negligence were proven by a preponderance of the evidence and the State was at fault in causing the plaintiff's injuries.

The only colorable argument that the plaintiff was somehow at fault is based on her riding in the gutter instead of on the asphalt. She testified that she was riding on the concrete gutter because she thought it was more dangerous riding on the asphalt in the direct path of automobiles and trucks. As we read the statute applicable to bicycle riders on state roads, she was doing exactly what the statute required of her. Tenn. Code Ann. §§ 55-8-101(52); 55-8-175(a)(1). There was no proof that the plaintiff was otherwise doing something unwise or illegal. Accordingly, we conclude that there was no fault to apportion to the plaintiff.

Although we could determine damages in this appeal after a bench trial, we decline. We believe for obvious reasons that the trial court is in a better position than this court to make that determination in the first instance. For one, it saw the plaintiff in person and we only have photographs. We will leave the issue of damages to the trial court on remand.

V.

The judgment of the trial court in favor of the State is reversed. The State is 100% liable for the injuries of the plaintiff. Costs on appeal are taxed to the State of Tennessee. This matter is remanded, pursuant to applicable law, for determination of the damages to be awarded to Beth L. Wineland.

_____
CHARLES D. SUSANO, JR., JUDGE