621 So.2d 6 (1993)
In re MEDICAL REVIEW PANEL Dianne D. BILELLO, Individually and as an Heir of Jacob T. Bilello.
Dianne D. McKENZIE, Individually and as an Heir of Jacob T. Bilello
v.
ALTON OCHSNER MEDICAL FOUNDATION d/b/a Ochsner Foundation Hospital, Ochsner Clinic, Erick M. Fajardo, M.D., Elizabeth J. Demagno, M.D., Stephen F. Freedman, M.D., Carlos C. Perez, M.D., Walter S. Culpepper, M.D., Noel L. Mills, M.D., Harvey P. Marice, M.D., Michael D. Horowitz, M.D., and Jose L. Zamora, M.D.
Nos. 92-CA-1027, 92-CA-1028.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1993.
Rehearing Denied August 12, 1993.
*8 C. Scott Carter, Metairie, for plaintiff-appellee.
Arthur J. Lentini, Connick, Lentini, Mouledoux, Wimberly & delaup, Metairie, for defendants-appellants.
Before BARRY, WARD and ARMSTRONG, JJ.
ARMSTRONG, Judge.
In this medical malpractice action, defendants, Alton Ochsner Medical Foundation d/b/a Ochsner Foundation Hospital and Ochsner Clinic, appeal a judgment rendered against them and in favor of plaintiff, Dianne D. Mckenzie, individually and as heir of her deceased minor son, Jacob T. Bilello.
Plaintiff's decedent, Jacob Bilello, one of two children born to plaintiff, was born on May 25, 1972. At the age of approximately seven weeks, it was discovered that Jacob suffered from a congenital heart defect requiring immediate surgery. At the age of eight years he again underwent open heart surgery. After living a relatively normal life, on July 14, 1986, Jacob underwent a third open heart surgery at Ochsner Foundation Hospital. On July 19, 1986, Jacob began suffering from what was later determined to be a build-up of fluid in the pericardial sac surrounding the heart. On July 23, 1986 Jacob died because of defendants' failure to promptly drain the fluid.
Plaintiff subsequently filed a complaint alleging medical malpractice on the part of defendants. Pursuant to the Medical Malpractice Act, La.R.S. 40:1299.41, et seq., a medical review panel was convened and an opinion was issued. Thereafter, plaintiff partially settled her claims against defendants for $100,000.00, reserving her rights to a determination of the damages to be paid by the Louisiana Patient's Compensation Fund, subject to a credit for the $100,000.00 already paid.
Defendants stipulated to liability and, after a trial on the issue of damages, the jury rendered a verdict awarding a total of $650,000.00 in damages to plaintiff. The damages were itemized as follows: $450,000.00 for loss of love and affection; $125,000.00 for the deceased's pain and suffering; $63,000.00 for plaintiff's mental anguish; and $12,000.00 in medical expenses.
The trial court entered judgement in favor of plaintiff and against defendants in the amount of $512,000.00 pursuant to the limitation of recovery specified in La.R.S. 40:1299.42(B)(1), subject to a credit of $100,000.00 pursuant to La.R.S. 40:1299.42(D)(5), along with costs and legal interest on $412,000.00 from the date plaintiff filed her complaint under the Medical Malpractice Act.
The trial court denied defendants' motions for judgment notwithstanding the verdict, new trial and remittitur. On appeal defendants raise seven assignments of error, four of which relate to damages, two to evidentiary matters, and the last to the trial court's denial of defendants' post-trial motions.

ADMISSIBILITY OF EVIDENCE ALLEGEDLY RELATING TO LIABILITY
Defendants claim the trial court erred in admitting evidence, consisting of the testimony of plaintiff, on the issue of liability. Defendants correctly point out, and plaintiff concurs, that the liability of defendants was deemed admitted upon the court's approving of the settlement wherein defendants paid plaintiff $100,000.00. La.R.S. 40:1299.44(C)(5). See also Stuka v. Fleming, 561 So.2d 1371 (La.1990); Moolekamp v. Rubin, 531 So.2d 1124 (La.App. 4th Cir.1988). Accordingly, during jury selection the trial court advised the jury that fault was not an issue, only damages.
During plaintiff's testimony she related in detail the circumstances leading up to Jacob being taken into surgery to drain the fluid that had built up in his pericardial sac. Jacob went into cardiac arrest while undergoing that surgery and died several days later. Plaintiff recounted how Jacob's lips, tongue, fingers, and toes turned blue and how the nursing staff did nothing but give him some Tylenol. She described how Jacob became "freezing" cold. She related how she could not "stand to see him like *9 that," and how she could not "get any help for him." Even a cold reading of the transcript gives one an idea of how upset and frantic plaintiff was as she watched her son suffer while defendants' employees did virtually nothing. Plaintiff later described how Jacob screamed as he was being taken down the hall to surgery to have the fluid drained.
Relevant evidence is "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.C.E. art. 401. Even though relevant, evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice." La.C.E. art. 403. The issue before us is whether the evidence complained of is relevant and, if so, was its probative value substantially outweighed by the danger that it would prejudice defendants. Unfair prejudice as contemplated by La.C.E. art. 403 means that the evidence has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. See Authors' Note (4) to C.E. art. 403.
Though liability was established, plaintiff bore the burden of proving any damages she may have sustained, including the pain and suffering experienced by Jacob before his death, as a result of defendants' fault. Moolekamp v. Rubin, supra. Severity and duration are factors to consider in assessing damages for pain and suffering. Perez v. State, Through DOTD, 578 So.2d 1199 (La.App. 4th Cir.1991), writ denied, 581 So.2d 706 (La.1991). Damages for a decedent's pain and suffering may be awarded when there is a "scintilla of evidence of any suffering or pain on the part of the deceased." Whittington v. American Oil Co., 508 So.2d 180 (La.App. 4th Cir.1987), writ denied, 512 So.2d 436 (La. 1987). Fright, fear or mental anguish while an ordeal is in progress is legally compensable. Dawson v. James H. Stuart and Deaton, Inc., 437 So.2d 974 (La.App. 4th Cir.1983). A person is also entitled to recover damages for severe and debilitating mental pain and anguish arising out of injury to third persons. Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990).
Plaintiff sought damages for the pain and suffering experienced by Jacob before his death, after the fluid began building up in his pericardial sac on July 19th. She also sought Lejeune damages for her mental pain and anguish at seeing her son needlessly suffer and die. The testimony complained of had a tendency to make the existence of Jacob's pain and suffering and her mental pain and anguish more probable than it would have been without that evidence. In fact, the evidence was essential to illuminate for the jury the full spectrum of Jacob's pain and suffering and plaintiff's mental pain and anguish. The evidence was, of course, prejudicial to defendants to the extent that it established plaintiff's damages. It was essential to establish damages to which plaintiff was arguably entitled. This was an unavoidably emotional case. However, it cannot be said that the probative value of such essential evidence was substantially outweighed by its prejudicial effect. We find no error in the trial court's admitting the testimony of plaintiff detailing the events surrounding the gradual build-up of fluid in Jacob's pericardial sac.

ALLEGED CUMULATIVE AND PREJUDICIAL PHOTOGRAPHS
Defendants claim the trial court erred in admitting cumulative and prejudicial photographs and testimony depicting Jacob and his activities. Eight photographs of Jacob were introduced in evidence. One shows Jacob at approximately one year and seven weeks old, one year after his first surgery. This photograph shows a healthy child at play. The second shows Jacob a few years older sitting at a desk with a book in front of him. The third photograph is of Jacob showing off his scar after the second surgery when he was eight years old. The fourth shows a smiling Jacob in a football uniform astride the motorized dirt bike which, testimony established, he loved to ride. The fifth photograph shows Jacob sitting in a helicopter. *10 This photograph depicts a healthy child days before he went into the hospital for the last time. The sixth photograph shows Jacob sitting in his aluminum flatboat in the bayou near his home where he spent many hours fishing. That photograph was developed in July 1986, the month Jacob died. The final two photographs show Jacob with his physical therapist in the hospital following the third heart surgery. The photographs depict a recovering child walking down the hospital corridor and standing next to the therapist.
Much testimony was adduced at trial from plaintiff concerning Jacob's zest for life and his normal active childhood despite his heart condition. Similar but less detailed testimony was given by plaintiff's mother, her stepfather and one of Jacob's childhood friends.
The photographs and testimony were relevant because they tended to make the existence of facts of consequence to the determination of damages more probable than they would have been without that evidence. La.C.E. art. 401. The photographs and testimony established that Jacob had a normal childhood except for the two surgeries at seven weeks and eight years old. They established that immediately before his death he had been a healthy, smiling and happy child. The evidence tended to establish that following the third surgery, before the fluid build-up, Jacob was on the road to recovery and a normal childhood just as after the two previous surgeries.
We are unable to say that the evidence was cumulative or that its probative value was substantially outweighed by the danger of unfair prejudice.

DAMAGES
Defendants claim the trial court erred in making each award of damages.
1. Loss of love, affection, services, companionship and society.
The jury awarded $450,000.00 for plaintiff's loss of love, affection, services, companionship, and society as a result of Jacob's death. Before an appellate court can disturb a trial court's award of general damages, the record must clearly reveal that the trier of fact abused its discretion in making the award. Only after finding that the record shows that the trial court abused its discretion can the appellate court disturb the award, and then only to the extent of raising or lowering it to the highest or lowest point which would have been within the discretion afforded the trial court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979). Burton v. Berthelot, 567 So.2d 649 (La.App. 4th Cir. 1990), writ denied, 569 So.2d 989 (La.1990). Before an appellate court questions a trial court award as inadequate or excessive, it must look not to prior awards, but to the individual circumstances of the instant case. Reck v. Stevens, 373 So.2d at 501. The basic question to be considered is whether the general damage award is so high as to shock the conscience of the reviewing court. Bourgeois v. Puerto Rican Marine Management, Inc., 589 So.2d 1226 (La.App. 4th Cir.1991), writs denied, 592 So.2d 1299, 592 So.2d 1300 (La.1992).
The life expectancy of Jacob was relevant to this item of damages. Dr. Watts Webb, who testified on behalf of plaintiff, stated that Jacob's life expectancy after the third heart operation would have been between ten and twenty years. Even if Jacob had undergone a heart transplant, Dr. Webb stated that there was only a fifty-percent chance that it would have increased his life expectancy by up to five years. Jacob was plaintiff's only son. For most of his life she was a single parent with sole custody of Jacob. They had a close relationship. Plaintiff's testimony established that Jacob was full of life and enjoyed a normal active childhood. He loved to fish and ride his dirt bike. During his hospitalization plaintiff slept in Jacob's room on a cot until he had to go into the pediatric intensive care unit after the surgery to drain the fluid from his pericardial sac. She then slept in a nearby waiting room until his death. The evidence clearly indicates a loving and emotionally close relationship.
*11 Considering all of the evidence, we are unable to say that the jury's award to plaintiff of $450,000.00 for loss of love, affection, companionship, services and society for the death of plaintiff's only son was a clear abuse of discretion.
2. Damages for mental anguish of plaintiff.
Plaintiff was awarded $63,000.00 for her mental anguish arising out of Jacob's death. In Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), the Louisiana Supreme Court held that a person may recover damages for mental pain and anguish caused by physical injury to a third person. However, the court limited the availability of such damages, holding in part that:
The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
* * * * * *
The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating. For instance, Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983) held that "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." A non-exhaustive list of examples of emotional distress includes neuroses, psychoses, chronic depression, phobia and shock. Paugh, supra; Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).
Defendants submit that there was insufficient evidence to show (1) that Jacob suffered such harm that it would reasonably be expected that plaintiff would have suffered serious mental anguish from the experience and, (2) that plaintiff sustained a "severe and debilitating" emotional injury as a result of witnessing Jacob suffer. These are questions of fact. We cannot disturb the implicit findings by the jury that Jacob did suffer such harm and that as a result plaintiff sustained a severe and debilitating emotional injury unless the evidence is not sufficient to support such a finding and/or the finding is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Defendants submit that Jacob did not suffer the type of harm which could have been reasonably expected to cause plaintiff to suffer serious mental pain and anguish from witnessing it. They cite nursing notes in the records of Ochsner Foundation Hospital in support of their position. The notes reflect that the first sign of discomfort by Jacob was at 7:40 a.m. on July 20th. At 9:45 a.m. he complained of being very dizzy, but his respiration was noted to be unlabored. At 11:00 a.m. it was noted that his respiration was slightly rapid. By 11:50 a.m. Jacob had become agitated and by 11:45 a.m. it was noted that Jacob was in acute respiratory distress. He was removed to the operating room at 12:45 p.m. The notes reflect that at 5:00 p.m. he was able to open his eyes and move his fingers and toes when requested. The notes reflect that at 7:30 p.m. on July 21st Jacob was in a medicated "coma."
Plaintiff's testimony reflects that she was with Jacob on the evening of July 19th and the morning of the 20th when he began to experience distress. She watched as Jacob's lips, fingertips and toes gradually turned blue. She watched as his discomfort turned into acute respiratory distress. Plaintiff testified that Jacob said it felt like someone was sitting on his chest and that it was hard for him to breathe. She stated that during the night Jacob was "freezing" cold. Because he was feeling so weak, she had to help him get up, walk to the bathroom and urinate. Immediately prior to *12 the complications, Jacob had been able to do this himself. Plaintiff testified that Jacob thought he was dying, and that he "was really terrified." She later watched as Jacob screamed while being taken to surgery to drain the fluid from his pericardial sac.
We believe the record supports a finding that Jacob suffered such harm that plaintiff could have reasonably been expected to suffer serious mental pain and anguish from witnessing it. We are unable to say that such a finding would be clearly wrong.
In Matthews v. Turner, 566 So.2d 133 (La.App. 5th Cir.1990), writ denied, 571 So.2d 645 (La.1990), a medical malpractice case, the decedent died of acute suppurative appendicitis, which had been wrongly diagnosed as a urinary tract infection. Citing Lejeune, supra, the court affirmed an award of $50,000.00 to the decedent's mother for her mental pain and anguish at watching her eighteen year-old daughter suffer and die. In Price v. DOTD, 608 So.2d 203 (La.App. 4th Cir.1992), this court upheld an award of Lejeune damages to a minor child with Down's syndrome who witnessed his father being struck by a Mississippi River Bridge Authority police officer.
In the instant case, defendants argue that there was no expert medical testimony concerning plaintiff's mental state as a result of watching Jacob suffer and die. However, there was no such medical evidence presented in Matthews, supra or Price, supra, either. Plaintiff testified only that she read some self-help books to help her cope with Jacob's death, and threw herself into her work, working a lot of overtime. She was prescribed an anti-depressant medication by a family physician to help her deal with her depression. There was also testimony by her mother and stepfather about the affect Jacob's suffering and death had on her.
We believe this type of case warrants Lejeune damages for mental pain and anguish. Based on the evidence, it is difficult to argue that plaintiff did not experience severe and debilitating mental pain and anguish while watching her fourteen year-old son needlessly suffer and die. We find no abuse of discretion in the jury's award of $63,000.00 for plaintiff's mental pain and suffering.
3. Decedent's pain and suffering.
The jury awarded plaintiff $125,000.00 for Jacob's pain and suffering prior to his death. The record supports the view that Jacob suffered before he died, not only from physical pain, but from mental pain and anguish. Fright, fear or mental anguish while an ordeal is in progress is legally compensable. Dawson v. James H. Stuart and Deaton, Inc., supra. A dispositive question as to whether the general damage award is excessive is whether it shocks the conscience. Bourgeois v. Puerto Rican Marine Management, Inc., supra.
Jacob began feeling discomfort on the evening of July 19th. By 7:00 p.m. on July 20th the nursing notes reflect that he was in a medicated coma. There was less than a twenty-four period during which Jacob suffered. During part of that period he was undergoing surgery and was presumably unconscious.
Considering the facts and circumstances of this particular case, we cannot say that the award of $125,000.00, although very high, shocks the conscience or was a clear abuse of the great discretion afforded the jury.
4. Medical expenses.
The jury awarded plaintiff $12,000.00 for Jacob's medical expenses. Defendants claim this sum is not supported by the record. Introduced in evidence was a bill from Ochsner foundation Hospital totalling $26,803.50. In his brief on appeal plaintiff does not point to any portion of that bill representing charges incurred as a result of the negligence of defendants in failing to properly treat the fluid build-up in Jacob's pericardial sac. Of course, the original open-heart surgery was a scheduled operation, the cost of which is not related to defendants' failure to treat the fluid build-up. There is no evidence that *13 there was any act constituting malpractice during the initial heart surgery.
A plaintiff must prove every item of damages with legal certainty. Hargroder v. Protective life Ins. Co., 556 So.2d 991 (La.App. 3rd Cir.1990), writ denied, 559 So.2d 1367 (La.1990). This includes medical expenses. See Poche v. Frazier, 232 So.2d 851 (La.App. 4th Cir.1970), writ denied, 256 La. 266, 236 So.2d 36 (1970).
Plaintiff did not prove what portion of the total amount of medical expenses was attributable to the fault of defendants. Therefore, the jury erred in awarding $12,000.00 for medical expenses.
Our disposition of the foregoing assignments of error renders moot consideration of defendants' assignment of error relating to the trial court's denial of their post-trial motions for JNOV, new trial and remittitur.
For the foregoing reasons, we amend the judgment of the trial court to eliminate the award of $12,000.00 for medical expenses.
AMENDED; AFFIRMED AS AMENDED.