liBROWN, Judge.
On a back road in Morehouse Parish, 16-year-old Bradd Rudolph drove his car through a “T” intersection and plunged into an adjacent bayou. Two teenagers in the back seat drowned. The parents of both victims brought survival and wrongful death actions against the Morehouse Parish Police Jury and the liability insurer of the Rudolph vehicle. The driver’s insurer was dismissed after settling. This appeal involves the claims of the father of one victim, 15-year-old Michael Hill, against the police jury. The trial court found that the police jury was “cognizan[t] of the potential danger of this intersection” and posted inadequate warnings. The police jury’s fault was set at 20% and the driver’s at 80%. An appeal was taken by the police jury; plaintiff answered the appeal seeking increases in the allocation of fault and damages. We amend and as amended, affirm.
FACTS
The banks of a popular fishing hole on the Ouachita River were known to the police jury as a gathering place for teenagers and appropriately titled the “hangout”. The only access to the “hangout” was by Parish Road 1132 which ran for four miles between the “hangout” and the Point Pleasant Road (Parish Road 1122). These two roads met in a “T” intersection which was marked only by a stop sign for traffic on the “hangout” road. The Point Pleasant Road generally runs alongside Bayou Bartholomew. No double arrow sign, fence, or other distinguishing feature warned motorists returning from the “hangout” of the “T” intersection and the need to turn right or left.
The night of February 20, 1987, was described as cold, dark, and foggy with misty rain. That night, Bradd Rudolph drove Michael Hill and two other teenagers to the “hangout” from a party in town. Rudolph testified that he had consumed at least two seven-ounce “pony” beers at the party. Because one of the pother passengers was facing an 11 p.m. curfew, the group hurriedly left the hangout.
Despite the darkness, road conditions, and 35-mile per hour speed limit, Bradd Rudolph drove at a high rate of speed. On reaching the “T” intersection, Rudolph failed to see the stop sign and drove through the intersection, over a ditch, down an embankment and into Bayou Bartholomew (152.5 feet).[1] Although the car sank quickly, Rudolph and the front seat passenger escaped. Michael and the other back seat passenger, a 13-year-old girl, drowned.
Michael’s father, Jerry Wayne Hill, brought both survival and wrongful death actions against Bradd Rudolph’s insurer, the Morehouse Parish Police Jury and its insurer. The driver’s insurer settled and a bench trial proceeded against the police jury and its insurer. The trial court found that the police jury was aware of the danger posed by the intersection and that it breached its duty of care by failing to properly mark the “T” intersection. Fault was allocated 20% to the police jury and 80% to Bradd Rudolph. Plaintiff was awarded $31,587.53, representing 20% of a general damage award of $150,-000 and a special damage award of $7,937.64.
In this appeal, the police jury argues against the assessment of any fault on its part. Plaintiffs answer to the appeal seeks *246 an increase in both the apportionment of fault and measurement of general damages.
DISCUSSION

Fault

Appellate courts are charged with a duty to affirm a trial court’s decision absent an error of law or a factual finding which is manifestly erroneous or clearly 1 gwrong. Rosell v. Esco, 549 So.2d 840 (La.1989). In reviewing the fact finder’s conclusions, an appellate court should not question whether they were right or wrong, but whether the conclusions were reasonable. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
In a written opinion, the trial court found that Bradd Rudolph was “well acquainted” with the road and intersection.[2] The trial judge concluded that the teenagers left the “hangout” and raced towards the intersection at an excessive speed approaching 65 miles per hour. Two hours after the accident, Bradd Rudolph’s blood alcohol content measured .05%. The trial court accepted an expert’s estimate that Rudolph’s blood alcohol level was approximately .10% at the time of the accident.[3] Thus, the trial judge concluded that Rudolph’s negligence was the primary cause of the accident that led to the death of Michael Hill.
The trial court specifically found that Bradd Rudolph did not intentionally run through the intersection and into the bayou. Experts on both sides testified concerning the adequacy of the single stop sign posted at the intersection. Although, not mandated by uniform guidelines, the experts agreed that caution clearly dictated the placement of the stop sign and that the need for additional warnings was dependent on history and common sense.
As observed by the trial court, “[B]oth parties produced what has now become the mandatory accident expert whose testimony, as usual, was of little help to the court.” The true experts, in this case, were the two More-house Parish road supervisors who testified at trial.
14James Roan, one of the road supervisors, testified to a standard practice, at the time of this accident, of placing double arrow signs at the top of all “T” intersections “dead center ... on the far side of the road.” He also stated that parish workers carried replacement signs in their vehicles. He further noted that the signs were not costly because the police jury made the signs and only purchased the decals. Roan was familiar with the intersection in question and testified that had he been responsible, he would have maintained a double arrow sign at that location. Roan believed the intersection was dangerous.
Garland Myers, another parish road supervisor and the supervisor with responsibility for this “T” intersection at the time of the accident testified to placing double arrow signs at the top of the intersection; however, these signs had been knocked down by vehicles and/or stolen as many as twelve times. Although Meyers checked the intersection about twice a week and “... didn’t hardly miss a week,” he estimated that the double arrow sign had not been replaced for 3 months prior to the accident. Myers knew of at least one prior serious accident occurring at night at this intersection. Although in his pre-trial deposition Myers stated that he believed the intersection was dangerous enough to put up the double arrow sign, he backed off of that opinion at trial.
The trial judge specifically found:
[tjhat the governing parish police jury had prior notice or cognizance of the potential danger of this intersection and had made at least other attempts to improve the situation by the erection of other traffic signals and controls which were nonexistent at the time of this accident, (emphasis added).
*247 The trial judge found defendants concurrently liable with Bradd Rudolph for the accident that killed Michael Hill.
The trial court’s factual determinations are supported by the record. Certainly, the driver’s alcohol consumption and speed were significant factors ^contributing to the accident. The police jury, however, knew that this road was used at night by teenagers returning from gatherings at the “hangout.” The testimony of the police jury’s road supervisors and its prior action in posting double arrow signs at the intersection indicated an awareness of the danger and a realization of a duty to provide warnings. The cost and inconvenience of replacing the double arrow marker was small when compared to the need.
This court explained the duty owed in Stephens v. Town of Jonesboro, 25,715 (La. App.2d Cir. 08/19/94), 642 So.2d 274, writ denied, 94-2351 (La. 11/29/94), 646 So.2d 400, as follows:
The responsible governing authority which has jurisdiction over the highway, road, street or thoroughfare has the legal duty to erect warning signs or barricades sufficient to warn motorists of any unusual obstructions, perilous condition or defect in the road face that would entail danger to the physical safety of those proceeding over such routes.... Further, motorists are not required to anticipate that a roadway on which they are traveling will suddenly end in an unmarked ditch or body of water.
See also McCoy v. Franklin Parish Police Jury, 414 So.2d 1369 (La.App.2d 1982), involving a “T” intersection.
LSA-R.S. 9:2800 provides that a plaintiff, seeking damages against a government defendant under the strict liability theory of LSA-C.C. Art. 2317, must still prove “actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.” Thus, the proof required is the same under either a negligence, LSA-C.C. Art. 2315, or strict liability premise.
In this case, the trial court found both knowledge of the defect or danger and failure to correct. The bayou running alongside the Point Pleasant Road caused this intersection to present greater danger than normal. Under these |6specific circumstances, the need for additional signs at this particular intersection was shown. Such precautions were to prevent exactly what occurred in this case and were within the scope of the protection afforded by the duty breached. The final question is whether the police jury’s conduct was a cause-in-fact of the resulting harm.
The purpose for marking this intersection with a double arrow sign was to provide the earliest possible warning. Such a sign would have been directly in front of Rudolph’s car and visible in his headlights. The stop sign, however, was on the shoulder of the roadway. A double arrow sign would have clearly increased Rudolph’s reaction time and significantly reduced the possibility, as described by the trial court, of “passing through the intersection, over a small roadside ditch, and down the roadside embankment into Bayou Bartholomew.” This was exactly the purpose of the double arrow sign. Certainly the police jury’s failure to provide this early warning was a substantial factor along with the negligence of Rudolph in causing the harm. Campbell v. State through DOTD, No. 94-C-1052 (La. 01/17/95), 648 So.2d 898.
The trial court’s factual findings were not manifestly erroneous or clearly wrong. Its conclusion that the police jury’s breach of its duty was a factor in causing the harm is reasonable.

Allocation of Fault

While defendants argue that they should bear no fault, plaintiff argues that defendants should have been found at least 70% at fault. The trial court’s allocation of fault is subject to the manifest error rule. Towns v. Georgia Casualty & Surety Co., 459 So.2d 124 (La. App.2d Cir.1984).
These were typical rural back roads. It was a cold, dark winter night. It was foggy with misty rain. Rudolph never saw the “T” intersection until he was in it. ^Obviously, *248 Rudolph’s condition and the speed he was traveling lessened his reaction time upon entering the intersection.
The chances of the deadly consequences of this accident occurring would have been less had the double arrow sign been in place. A longer reaction time, in this ease, may not have prevented an accident, but it could have caused the vehicle to stop short of the bayou. We find that the presence of such a sign would have reduced the possibility of the vehicle plunging into the bayou. See Campbell v. State through DOTD, supra. Under these circumstances, we conclude that the lowest allocation of fault that could reasonably be imposed was 65% to the driver and 35% to defendants.

Damages

In the assessment of damages in eases of offenses, quasi offenses and quasi contracts, much discretion is to be left to judge or jury. LSA-C.C. Art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
The loss of a child can never be adequately compensated. No equation exists that can express the profoundness of the loss in terms of any monetary judgment. Such a loss cannot be fiscally measured. A monetary award is merely a practical attempt to temper the loss. The elements of damages are loss of love and affection, loss of services, loss of support, medical expenses and funeral costs. Dixon v. Mid-South Rail Corp., 580 So.2d 438 (La.App.2d Cir.1991), writ denied, 584 So.2d 1160.
Plaintiff had only one child. Although divorced, plaintiff obtained full custody of his son when he was five years old. Plaintiff had not remarried and had raised his son as a single parent. Plaintiff and his son were close. The night of the accident plaintiff was notified at about 12:30 p.m. He went to the accident site. Although the accident occurred on a Friday night, the car was not found until |8Sunday. The other back seat passenger’s body was found with the car, but Michael’s was not. Seventeen days later, Michael’s body was recovered. Plaintiff was at the accident site each day during the search for his son.
Michael was a healthy 15-year-old. Plaintiff was 49 years old at the time of trial in 1994, and rightly expected many years of enjoyment with his son. He has lost the hope of grandchildren. Accordingly, plaintiff was entitled to an award of damages for the wrongful death of his son.
Considering all the evidence, we find, although on the low side, that the amount awarded was not an abuse of discretion.[4]
CONCLUSION
The factual findings made by the trial judge were neither manifestly erroneous nor clearly wrong; however, the allocation of fault was unreasonable and is amended to apportion 65% to Bradd Rudolph and 35% to the Morehouse IgPolice Jury. The general damage award does not reflect an abuse of the trial court’s discretion and is affirmed. All costs to be paid by defendants.
AMENDED and AS AMENDED AFFIRMED.
*249 NORRIS, J., and PRICE, J. Pro Tern, concur with reasons.

. Our calculation, reckoned from defendant’s scale drawing of the intersection, of the distance from the stop sign to the saplings bent at the edge of the bayou.

. The evidence showed that Rudolph did not live in the area, but had traveled to the “hangout” on other occasions. The description of Rudolph’s knowledge as "thorough” is debatable.

. LSA-R.S. 32:662 provides a presumption of being under influence of alcoholic beverages at .10%. Under a 1994 amendment the presumptive percentage for a person under eighteen is .04%.

. The writer, however, is concerned that the survival action was ignored at trial. After plunging into the bayou, at least two occupants managed to free themselves from the sinking vehicle while sustaining little or no injuiy. Although one victim's body was found inside the car, Michael’s body was found approximately one mile down stream. The evidence suggests that the crash was not sufficient to cause immediate death and that Michael drowned while struggling to free himself from the vehicle or shortly thereafter. For some period, however brief, this young man fought for his life and lost. Accordingly, plaintiff is entitled to recover for Michael's pain and suffering. LSA-C.C. Art. 2315.1(A).
In assessing the general damage award, the trial court did not consider Michael’s struggle to live and consequentially his suffering. Although both the survival and wrongful death actions arise from the same tort, they are separate and distinct. Guidry v. Theriot, 377 So.2d 319 (La.1979). The survival action permits recovery for damages suffered by the victim from the time of injuiy to the moment of death. The wrongful death action arises only upon the victim's death and compensates his beneficiaries for their own lost. Guidry v. Theriot, supra.
The writer was inclined to find that the lowest amount that could have reasonably been awarded in general damages for both actions was $250,000. See In re Medical Review Panel Bilello, 621 So.2d 6 (La.App. 4th Cir.1993).