| iKLEES, Judge.
Defendants Judy Harris, owner of the City Lights nightclub, and the First Financial Insurance Company, the club’s insurer, appeal the judgment of the district court finding them jointly hable for 70% of the damages suffered by plaintiff Julie Sagona. Upon our review of the record, we affirm.
On the evening of July 14, 1991, Julie Sagona visited the City Lights nightclub for the first time. The nightclub presents itself as upscale, and Ms. Sagona had dressed accordingly in an outfit with high heels. These high heels became uncomfortable as she danced; so, at some point during the evening, she removed her shoes and danced in her stocking feet. This was against the rules of the nightclub.
The nightclub’s floor was crowded with other dancers, several of whom had taken their drinks out onto the dance floor. These drinks were served in breakable glass; taking the drinks on the dance floor was also against the rules of the nightclub.
At some point during the evening, a patron near Sagona apparently lost her grip on a glass, which fell to the dance floor and shattered. Some patrons, as well as a City Lights employee, heard the resulting crash; however, Sagona did not. She danced onto a piece of the glass, which severely lacerated her foot. Although Sagona sought immediate medical attention, her foot developed a serious infection which caused her a great deal of pain, and even required hospitalization. She needed crutches to help her walk until February of 1992.
Sagona filed suit against Judy Harris, d/b/a City Lights, and the First Financial Insurance Company, alleging that their negligence in allowing the broken glass on the dance floor and in failing to adequately warn her of that danger caused [ 2her injury. After trial in the district court, the jury found in favor of Sagona, finding defendants hable for 70% of her damages. Sagona’s own negligence was held responsible for the remaining 30%. The jury awarded Sagona $50,990.79 in past medical damages and $30,000.00 for pain and suffering. From this verdict defendants appeal, making two assignments of error.
Defendants first argue that Sago-na’s comparative fault was clearly greater than the 30% allocated by the jury. In apportioning fault, the trier of fact should consider the conduct of each party at fault, and the extent of the causal relationship between the conduct and the damages claimed. Campbell v. Dept. of Transportation & Development, 94-1052 (La. 1/17/95), 648 So.2d 898. Specifically, to determine the percentage of comparative fault, the trier of fact must consider the Watson factors:
(1) whether the conduct resulted from inadvertence or involved an awareness of danger;
(2) how great a risk was created by the conduct;
(3) the significance of what was sought by the conduct;
(4) the capacities of the actor, whether superior or inferior;
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985.)
Defendants argue that these factors have not been properly taken into account in the present case. Sagona admits to taking off her shoes while on the crowded dance floor. Patrons were on the floor with glasses, and Sagona noticed this before removing her shoes. If warnings were being projected into the club, Sagona did not notice them; *597 defendants suggest that her failure to notice this, and perhaps her other carefree behavior, could be attributed to the fact that Sago-na had been drinking that night.
They liken the present ease to Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993). In Faucheaux, the decedent suffered ajjheart attack when the fishing boat he was operating was struck by a descending gate blocking a canal. The Supreme Court applied the Watson factors and held the decedent 40% at fault for the accident; he had apparently been inattentive during the gate’s slow descent, and would have had ample time to avoid the accident had he been more observant. Defendants blame Sagona’s injury on her inattention; she did not notice the large video monitors in the club, much less the warnings flashed upon them. Had she done so, they argue, she would have known not to remove her shoes.
Applying the Watson factors does not lead this court to the same conclusion as the defendants. If we accept defendants’ description of the warnings being flashed upon the video screens, these were displayed for approximately ten seconds every half hour. Given that these warnings were competing for attention with flashing lights and blaring music, it is easy to see how such brief and infrequent messages could easily be missed by City Lights patrons. Sagona’s failure to notice these warnings was not unacceptably careless. City Lights had, by its own estimates, up to 60 such incidents each night; instead of making changes such as serving beverages in unbreakable drinkware or more carefully patrolling the dance floor, the club attempted to send employees out to sweep up each spill as it came. In the present ease, it appears that even this procedure was poorly executed. Sagona’s imprudent conduct — removing her shoes on the dance floor — did not create extreme risk. It is true that Sagona had been drinking that evening; however, she was drinking the alcoholic beverages served by City Lights. (As the nightclub has a financial interest in seeing that its patrons drink at the club, and thus encourages and facilitates the consumption of alcohol, City Lights is in a poor position to condemn Sago-na’s drinking on the night in question.) Sa-gona did violate the club’s rules; however, we find that the 30% fault allocated to her by _Jjthe trial court is appropriate. We therefore find no merit in defendants’ first assignment of error.
In their second assignment of error, defendants argue that the jury’s award of $30,000.00 in general damages to Sagona was in error. Much discretion is given to the trier of fact in assessing damages in eases of tort; however, in reviewing an award, the appellate court needs to look to the facts and circumstances of the individual case. Mathieu v. Imperial Toy Corp., 93-1182 (La.App. 4 Cir. 1/13/94), 632 So.2d 375. Appellate courts are to take into consideration the particular effects of the particular injuries on the particular plaintiff. Fleming v. Smith, 93-488 (La.App. 5 Cir. 5/31/94), 638 So.2d 467, 473.
General damages are to be determined on a case-by-case basis, evaluating physical and mental pain and suffering, inconvenience, loss of physical enjoyment or intellectual gratification, and other factors affecting the injured party’s life. Nuckley v. Gail M. Woods, Inc., 94-2190 (La.App. 4 Cir. 4/26/95), 654 So.2d 840, 841. Factors to be considered when assessing damages for pain and suffering are severity and duration. In Re Medical Review Panel Bilello, 621 So.2d 6, 9 (La.App. 4 Cir.1993.)
In the present case, Sagona suffered extreme pain in the months immediately following her accident. She was hospitalized for over a month and, upon her release, was still being given epidurals three times a week another month and a half later to help her deal with the pain from her lacerated foot. Seven months after the incident, Sagona had recovered well enough to be able to perform light work, but was still recuperating from the injury and infection. All these facts suggest that Sagona suffered considerable pain and inconvenience.
However, some nine months after the accident at City Lights, Sagona was accosted by an armed robber who shot her in the neck. As a result of this criminal |sact, Sagona is now paralyzed and has no feeling in her *598 lower extremities. Defendants suggest that sympathy for Sagona’s present plight has unduly affected the calculation of the general damages award in this case. The injury to her foot can only have caused her pain and suffering for those nine months; defendants therefore feel that the award of $30,000.00 should be reduced.
Before an appellate court can disturb an award of damages by a jury, the record must clearly reveal that the jury has abused its discretion. Theriot v. Allstate Insurance Co., 625 So.2d 1337 (La.1993.) In the present case, Sagona’s foot was severely lacerated. The secondary infection she later developed required her to stay in the hospital for a month and a half. She had two surgeries during that time. After her release from the hospital, the pain in her foot was still intense enough to require epidurals three times a week for another month and a half. Given this evidence of physical trauma and inconvenience, we do not find that the jury abused its discretion in awarding Sagona $30,000.00.
For the reasons stated above, the judgment of the trial court is affirmed.

AFFIRMED.

SCHOTT, C.J., dissents.
BARRY, J., concurs.