JjBAGNERIS, Judge.
Defendants, Cox Cable of New Orleans (“Cox Cable”), and the Sewerage and Water Board of New Orleans (“S & W Board”) seek to reverse the judgment of the trial court. The trial court rendered judgment in favor of the plaintiffs, Cheryl Carter and Alicia Torres. The trial court allocated fault between Cox Cable and the S & W Board, fifty-fifty (50%-50%). For the assigned reasons, we affirm.

FACTS

On November 23,1998, a Regional Transit Authority (“RTA”) bus that was driven by Cheryl Carter, plaintiff, was involved in an accident in the 500 block of Dumaine Street in the French Quarter of New Orleans, Louisiana. The bus struck a pothole in the street that resulted in the driver losing control of the bus causing her to sustain personal injuries. The plaintiff, Alicia Torres, was a passenger on the bus at the time of the accident. As a result of the accident she sustained personal injuries. The bus struck an adjourning building, which caused property damage to the budding and the bus.
| ¡.Cheryl Carter and Alicia Torres, filed lawsuits for their personal injuries, Constitutional State Insurance, as the property insurer of the vehicle for property damage *27 and Greyhound Lines, as the owner of the bus for property damage sustained. Named, as defendants were the Sewerage & Water Board for the City of New Orleans, Greyhound Lines, the City of New Orleans through the Department of Streets and Cox Cable of New Orleans.
The trial court heard this consolidated lawsuit on December 7-8, 1998. The matter was taken under advisement and judgment was rendered on December 15, 1998. The trial court rendered judgment in favor of the Plaintiffs, Cheryl Carter and Alicia Torres against Cox Cable and Sewage and Water Board. The trial court found both defendants equally liable for the accident and allocated fifty-fifty (50%-50%) fault. Both appeal the trial court’s judgment.

DISCUSSION

A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). The Louisiana Supreme Court announced a two-part test for the reversal of a factfinder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence, which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to | ¡¡determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, Louisiana Supreme Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley, supra, at 973 (quoting Sistler, supra, at 1112.)
The Louisiana Supreme Court has recognized that “[t] he reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper *28 allocation of trial and appellate 1¿Junctions between the respective courts.” Canter v. Koehring Co., 283 So.2d 716 (La.1978); Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
On appeal, Cox Cable argues that the plaintiffs failed to sustain their burden of proof by a preponderance of the evidence all the essential elements of their claims in order to recover. Also, Cox Cable argues there is no evidence that showed that they did any work in the area, which caused the Sewage & Water Board’s pipe to be moved, which created the leak in the sewer line that caused the street to collapse.
S & W Board also appealed the trial court ruling. S & W Board contends the ruling of the trial court was incorrect in that:
A. The sewer line serving the property on Dumaine Street was damaged by the installation of the of the conduit by Cox cable, whose acts and negligence alleges caused all subsequent damages and injuries. Further, that S & W Board did not receive notice of a problem with the sewer line until the collapse of the street.
B. The plaintiff, Cheryl Carter, failed to seek medical treatment and failed to procure medical test to further any treatment she might have needed and received, thus her damages should have been restricted.
In the present case, we conclude, after review of the record, that the trial judge was presented with two permissible views concerning whether a defect existed in the street as well as whether S & W Board had actual or constructive notice of the defect in the street. The trial court’s findings were not manifestly erroneous. Thus, the trial court’s findings are reasonable in light of the record. Accordingly, the S & W Board contention is without merit.
|Jn the instant case, Anthony Najolia testified on behalf of S & W Board. He testified that on November 23, 1988, he received a call regarding an accident in the 500 Block of Dumaine Street between Decatur Street and Chartes Street. He testified he observed a depression in the street near the side of the street between the curb and the center of the street. A dye test was conducted which showed a “break in” had occurred in the sewer pipe. The breakage was in the “sewer house connection to the main, six inch pipe.” Najolia described the area underneath the street as decayed. He stated that “there was nothing underneath the street.it was all hollow, caved.” Further, that this was not the normal condition if the pipe was not broken. Najolia testified, “Something broke our connection pipe.” He testified further that it was the sewer pipe that caused the washout once it was broken.
Najolia testified he looked into the hole and observed a cable running across parallel to the road cut, from Chartes to Decatur Streets. He stated that the cable he observed is the type typically used by Cox Cable. He stated that the cable was positioned approximately 24 inches beneath the S & W Board pipe. He stated that the cable was the only utility near the sewer pipe.
John R. Huerkamp, a Mechanical Engineer and Chief of Operation testified on behalf of S & W Board. Huerkamp testified as an Expert in Sewer, Water and Drainage Engineering, in Maintenance of the System and in Soils and Subsidence. He stated that he visited the site in the 500 block of Dumaine to assess the damage several days after the street collapsed. *29 He opined, “It was possible that the street collapsed under the weight of the bus due to a void under the street that either the bus itself or the surface material falling into the void could have damaged the water service that resulted in a leakage”. However, Huerkamp in his earlier | fideposition testified that he did not know what caused the street to collapse in front of 516 Dumaine Street. Also, he stated he never personally looked into the hole or observed the cable that allegedly caused the damage to the sewer line. He based his opinion on the damage he observed when he went out to the site and a review of the records. Furthermore, he would defer to the judgment given by Najolia because of his years of experience, and actually observing the conditions, regarding what caused the washout of the street.
Huerkamp testified that S & W Board was aware Cox Cable was wiring the entire city and knew that they were going to do it. However, they did not know what particular block Cox Cable would be specifically working in at a certain time period. He stated that S & W Board does not employ a policy or practice of inspecting its sewer line when another utility has dug in the area unless they observe another utility company working in close proximity to its utilities and they think damage may occur to their facilities.
After careful review of the record in its entirety, we find no manifest error in the trial court’s findings that a defect existed and, that S & W Board had actual and constructive notice of the defect with the sewer line in the 500 Block of Dumaine Street. Thus, we find the trial court’s findings and inferences are reasonable in light of the testimony and evidence presented. S & W Board’s contention is without merit.
The next issue is whether the trial court erred in allocating fault. Cox Cable contends the trial court erred in allocating them 50% at fault. Cox Cable contends that there was no evidence presented that established any action performed by them caused the damage to the sewer line that contributed to the collapse of the street.
|7The trial court’s allocation of fault among the parties’ presents a factual determination based in part on credibility determinations by the trial judge. Such a finding is not to be reversed on appeal absent a finding of manifest error. Rosell, supra.
In allocating fault among the parties involved, the court is to consider several factors, as set out in Watson v. State Farm Fire and Cas. Ins. Co., 84-2158 (La.1985), 469 So.2d 967, quoting from Section 2(b) of the Uniform Comparative Fault Act and the Comments thereto:
In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
The court in Watson elaborated further stating:
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including
(1) Whether the conduct resulted from inadvertence or involved an awareness of the danger,
(2) How great a risk was created by the conduct,
(3) The significance of what was sought by the conduct,
(4) The capacities of the actor, whether superior or inferior, and
(5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts *30 such as last clear chance, the relationship between the fault/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties. Watson, supra, at 974
|sIn the instant case, the trial court based its apportionment of fault on the Watson factors. Despite contradictory-testimony, the trial judge expressly found that there was a defect in the 500 Block of Dumaine where this accident happened. Cheryl Carter, plaintiff, testified that she noted a "little sinkage” in the street. While there was minor conflict in the testimony between Najolia and Huerkamp, as emphasized by Cox Cable, there was testimony indicating that S & W Board knew of the sewer pipe problem. In fact, there was testimony that S & W Board went to repair an obstruction in the sewer line on September 28, 1988 and November 18, 1988. On September 28, 1988, Roto Rooter, a Service Contractor hired by S & W Board went out to unchoke a sewer connection that caused an obstruction in the sewer line at 522 Dumaine Street. On November 18, 1988, a week before the accident S & W Board received a complaint regarding an obstructed sewer line serving 522 Dumaine Street.
Najolia testified that the sewer pipe had to have been moved or pushed by some other object other than earth or whatever. He stated it could have been caused by the usage of a backhoe or a drill. He stated “Something moved the sewer pipe backwards and not downward.”
Huerkamp testified that the damage was possibly caused by directional drilling activities. He stated, “If the directional drilling had hit the sewer connection as it was trying to transverse to the next pit, it could have deflected the sewer house connection pipe and opened up a joint or crack the pipe.”
The trial court in its reason for judgment stated in part;
An investigation of the collapsed area of the street revealed the responsibility of two parties. Although the representative of Cox cable, Darren J. Mahler, testified that he was not aware of any problem with the company’s underground work in the area of the | ¡¡accident, he was not employed at the company at the time and he testified that the records from the time are now lost.
The testimony of the representative from the S & W Board of New Orleans indicated that there had been repair crews in the area of the accident on November 18, 1988 in response to complaints of an obstructed sewer line received at S & W Board the previous day. The work of another S & W Board representative established that the work conducted by Cox Cable had caused the sewer pipe to move slightly, creaking a leak in the sewer line, and thus, the area underneath the road on Dumaine Street to washout.
Based on our review, we find that the record support’s the trial court’s findings and coincident allocation of between S & W Board and Cox Cable. We find no manifest error in these findings.
The next issued raised by S & W Board is that the trial court erred by failing to restrict Alicia Torres’ damage award. They argue damages should be restricted because she failed to seek medical treatment and failed to procure medical test to further any treatment she might have needed and received. The pivotal issue is whether the award is excessive.
The standard for appellate review of general damages awards is difficult to express, as it is necessarily non-specific, and the requirement of an articulated basis for *31 disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from the jurisprudence is that the discretion vested in the trier of fact is “great” and even vast, so that an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
|]nIn order to determine whether the general damages award shocks the conscience, the court should look to the individual circumstances of the case. In Re Medical Review Panel Bilello, 621 So.2d 6, 10 (La.App. 4 Cir.1993), writ denied, 629 So.2d 1139. In effect, the award must be so high or so low in proportion to the injury that it “shocks the conscience.” Moore v. Healthcare Elmwood, Inc., 582 So.2d 871 (La.App. 5 Cir.1991).
In the instant case, Dr. Toussaint Le-clercq, a Neurosurgeon testified he treated Alisha Torres. On May 29, 1989 Torres came into his office complaining of cervical pain, shoulder, arm numbness, lumber sacral pain and leg pain. He testified a neurological examination on Torres and found her to have a decreased left radial occipital jerk and a left ankle jerk. He opined that this is indicative of a problem with the nerve. Further, that it was not diagnostic of anything in particular but further testing may need to be done. He diagnosed Torres with Cervical and Lumbar Strain. He recommended an electro-myogram (“EMG”) of the nerve conduction studies that was performed by Dr. Burns on June 5,1989. Dr. Burns concluded that there was nothing significantly abnormal on the EMG.
Torres had an x-ray of her lumbar spine with flexion extension that was performed by Dr. Voth on June 14, 1989. Dr. Voth concluded from the x-ray results that Torres had mild scoliosis of the lumbar spine. Dr. Leclercq testified that he could know whether this was caused by the accident or not. Further, Torres had an x-ray of her cervical spine was performed by Dr. Voth as well on June 14, 1989. Dr. Voth concluded the results were normal.
On June 26, 1989 Torres went in for a follow-up appointment with Dr. Leclercq. He stated that Torres had some improvement in her condition. Another physician had prescribed physical therapy for Torres. On August 23, 1989, Torres In returned to Dr. Leclercq’s office. Torres complained of pain in her back but seemed not to have any more radiation pain in her extremities. Dr. Leclercq discussed the test results with Torres and informed her that he did not see any serious problems that required neurosurgical treatment. He continued to recommend a conservative treatment of exercise and physical therapy.
On October 16, 1989, Torres again returned to Dr. Leclercq complaining of pain in her thoracic spine. Torres was doing her exercise and felt better. Dr. Leclercq informed Torres that he was unable to recommend any surgery. He recommended for her to continue the conservative treatment with Dr. Pedroza.
After reviewing the record in the instant case, we find the trial court was well within its discretion to award Alicia Torres, $15,000.00 in general damages. It in no way shocks the conscience. The trial court stated in written reasons for judgment that the testimony of Alicia Torres and the evidence presented established that she still suffers some low back pain, *32 and occasional neck discomfort. Thus, we find no error in the trial court’s judgment.

CONCLUSION

Accordingly, the trial court’s judgment is affirmed.

AFFIRMED.